RECEIVED
BY MAIL
DEC - 2 2004
CLERK US DIST COURT
MINNEAPOLIS MN

IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Joseph C. Pelchat, | ) | |
| Petitioner/Movant, | ) | |
| vs. | ) | 00-CR-25 (JMR/FLN)<br>03-CV-6532 (JMR/FLN) |
| United States of America, | ) | **MEMORANDUM OF LAW IN SUPPORT OF § 2255 MOTION** |
| Respondent. | ) | |

## STATEMENT

In providing a nexus between the § 2255 motion and this memorandum of law the issue of denial of due process raised in ground 12 of the motion is meant to encompass the relevant issues that were raised in the District Court, and on appeal. Of the relevant issues raised herein the only issue that has actually had an opinion voiced, or ruling, other than outright denial without comment, was by the 8th Circuit Court of Appeals concerning quantity of marijuana where that court merely ruled that Pelchat "pleaded guilty to conspiracy to distribute in excess of 100 kilograms of marijuana."

Thereafter, in his Petition for Rehearing Pelchat argued that the ruling was in error and has maintained his position up to this point. This issue, and all others presented herein are all properly preserved. Pelchat does not need to show cause because the issues have all been raised, but have not been ajudicated.



SCANNED
DEC 0 2 2004
U.S. DISTRICT COURT MPLS

Of the ineffective assistance of counsel claims, Pelchat asserts that counsels performance was deficient under the standards set by the Supreme Court in Strickland vs. Washington, 80 L. Ed. 2d 674 (1984); Hill vs Lockhart, 88 L. 3d. 2d 203 (1985); Glover vs. U.S, 148 L. Ed. 2d 604 (2001); and U.S. vs. Cronic, 80 L. Ed 2d 657 (1984) and that counsels performance prejudiced Pelchat.

Along with grounds 1 through 11 in the body of the § 2255 motion, except for specific points where necessary, the ineffective assistance of counsel shall manifest itself in the body of this memorandum of law. However, generally there are some points that need to be illustrated to aide in shedding light on the extent of Pelchat's claims.

In addition to the Strickland claim Pelchat asserts that performance, or in this case non-performance fits the "abandonment" criteria as set forth in Cronic where there had been a "breakdown of the adversarial process" and counsel did not "require the prosecution's case to survive the crucible of meaningful adversarial testing." at 661.

Outwardly, it appears that counsel was vigoriously defending his client. The truth is that apart from filing some boilerplate pre-trial (pre-plea) motions, from the change of plea forward counsel has not only been inffective, but detrimental to Pelchat's case. Pelchat has had to file motions from County Jail with very limited resources because his attorney refused. Of the motions

that attorney filed, Pelchat either wrote them himself, or had to instruct attorney's law clerks on what he wished filed. Much of the objections to the PSI were outright wrong. Pelchat wrote his own Appellate Suppelmental Brief and Attorney's law clerk, on his own, took out the supplemental factual history which was crucial to support issues in the supplemental brief. Pelchat wrote his Writ of Certiorari and had it to his attorney in time to submit the Writ, but attorney's office submitted an imcomplete Writ of Certiorari. (Please see attached cover letter to Supreme Court, Clerk of Court) Pelchat can prove all the motions, appeals, and Writ were wrote by himself as he has retained all handwritten notes, finished handwritten motions, appeals, Writs and all typed copies sent to attorney to submit. Perhaps if attorney had not abandoned his client and joined him in making proffessional cognizable claims the outcome would have been different.

At the plea hearing counsels performance went well beyond ineffective "assistance" to the point of <u>guaranteeing</u> Pelchat the maximum sentencing range possible by conceeding all sentencing factors, which Pelchat was led to believe (and was the state of the law at the time) would be determined by the Court at sentencing. <u>Hill vs. Lockhart</u>, proscribes the standard for counsel's performance at the plea proceeding and Pelchat's plea was not knowing, intelligent, or voluntary. Pelchat pled voluntarily to 21 U.S.C. §§ 841(a)(1) and 846. He had no idea

that his plea would be construed to encompass 21 U.S.C. §§ 841(b)(1)(B) and 851, and the career offender provisions of the U.S.S.G.. Pelchat did not enter a plea to, or admit to any of these statutes or provisions. There was no plea agreement with the government, yet counsel proceeded as if he had a personal plea agreement with the government. There was no strategic purpose to counsels actions and all he needed to do was reserve sentencing issues for the sentencing hearing. Pelchat would not have pleaded guilty had he known the true extent of his plea.

Attorneys ineffective assistance had led to District Court errors in the sentencing guidelines determination of Pelchat's sentence and, as a result of the errors, which counsel failed to argue, Pelchat's sentence was increased, squarely fitting the parameters of ineffective assistance of Glover vs. U.S..

Counsel's previous deficient performance had already had a possible prejudicial impact on the applicable guideline range but his ineffective assistance was compounded when he went completely against his client's position at the sentencing hearing. What is especially egregious in this instance is that counsel was fully aware of clients position and of the arguments that he had attempted to bring forth concerning application of the U.S.S.G. in this case.

The errors in sentencing were that Pelchat was sentenced under 21 U.S.C. §§ 841(b)(1)(B) and 851, and under the provisions of career offender, or at the very least under the wrong base

offense level of the career offender provisions.

## SENTENCING JURISDICTION

The Supreme Court set the standard for adjudicating ineffective assistance of counsel claims in Strickland vs. Washington, 466 U.S. 688, 687:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results is reliable."
>
> "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."
>
> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Id., at 694)

**Failure of counsel to object to the Court's lack of jurisdiction to impose a sentence and/or find guilt as to conduct neither admitted in a plea nor determined by a jury beyond a reasonable doubt.**

This nation was founded under a Constitution. The People have the ultimate Power in a democracy. Only those Powers granted to the Executive, Legislative, and Judicial Branches may lawfully be exercised by members of those Branches. The Legislative Branch is empowered by the stipulations and limitations set forth

in Article I of the United States Constitution. The People retained Power over the Legislature by means of elections; the House members every two years and the Senate members every six years. The People retained Power over the Executive by prescribing that the President and Vice-President would be elected every four years, as set forth in Article II. But, over the Judicial Branch, Article III says:

> "Section 1. The Judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congrss may from time to time ordain and establish....
> "Section 2. The Judicial Power shall extend to all Cases, in Law and Equity, arising under the Constitution, the Laws of the United States, and the Treaties made... [**BUT**]
> "The **trial of all Crimes**, except in case of Impeachment, **SHALL BE BY JURY**." (Emphasis added)

When a court determined guilt and then decides to impose a sentence on the defendant, and the defendant did not admit the conduct and no jury found him guilty beyond a reasonable doubt, that court has usurped the Power the People reserved over the judiciary. This is just as squarely wrong as it would be for a president to decide that he was going to ignore the Constitution and refuse to bow to the will of the People when they voted for his opponent at the end of his four-year term, or for a House member to refuse to step aside at the end of his two-year term when his opponent had been elected and he had lost.

In the simplest language possible, the Court exceeded its jurisidiction when it determined that Pelchat was guilty of conduct that was neither admitted nor proven to a jury beyond

reasonable doubt. The Framers never gave the judiciary the power to do that. Some advance the argument that once a defendant admits to certain conduct, the judge is able to enhance the sentence for relevant conduct or for other aggravating factors such as weapon possession, leadership, etc. In almost every case, these bases for enhancement are themselves elements of crimes not charged but prohibited by other statutes.

For example, possession of a weapon by a user of any controlled substance is a felony proscribed under 18 U.S.C. § 922(g). Obstruction of justice is proscribed by 18 U.S.C. §§ 1501-1519. Drug penalties are different under 21 U.S.C. §§ 841(b)(1)(A), (B), (C), and (D). Possession of stolen property is proscribed under 18 U.S.C. §§ 1831-1839. Inflicting serious injury during an extortion attempt is proscribed under 18 U.S.C. §§ 1951(a) and 1952(a)(2), though the Guidelines allow a judge to enhance the sentence when a defendant has admitted or been found guilty of violating 18 U.S.C. § 1952(a)(3), which says nothing about violence or injury.

The question arises as to whether this Court could find guilt and impose sentence for the underlying and charged offense if there was no confession and no jury found guilt beyond a reasonable doubt. The question is rhetorical as the answer is obvious. It would be violative of Article III, § 2, Clause 3 and the Sixth Amendment to do so. Often the offense admitted calls for a sentence that is perhaps 90 months and the probation

officer, under prompting by the "Department" (to quote what Hon. William G. Young in United States vs. Green, Case No. 02-10054-WGY, D.Mass., June 18, 2004, said when refusing to use the word "Justice" with respect to the DOJ) recommends and the the Court grants a sentence of three times that amount. Does the Court really believe it is bound and limited by the Constitution and the Sixth Amendment with respect to part of the offense and sentence, but not the rest of the offense and sentence? This is not just a Sixth Amendment violation, this is a challenge to the jurisdiction of this Court.

In Reid vs. Covert, 354 U.S. 1, 5-10, the Supreme Court spoke to the issue of jurisdiction, saying:

> "The United States is entirely a creature of the Constitution. Its power and authority have no other source. It can only act in accordance with all the limitations imposed by the Constitution...
>
> "The rights and liberties which citizens of our country enjoy are not protected by custom and tradition alone, they have been jealously preserved from the encroachments of governments by express provisions of our written Constitution.
>
> "Among those provisions, Art. 3, § 2, lays down the rule that: 'The Trial of all Crimes, except in Cases of Impeachment, shall be by jury....
>
> "The language of Art. 3, § 2 manifests that constitutional protections for the individual were designed to restrict the United States Government when it acts outside this country as well as here at home....
>
> "As Blackstone wrote in his Commentaries:
>
> "'...the trial by jury ever has been, and I trust ever will be, looked upon as the glory of the English law. And if it has been so great in regulating civil property, how much must that advantege be heightened when it is applied to criminal cases!...[I]t is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by unanimous consent of twelve of his neighbors and equals."

So, if the Constitution witholds Power from the federal judiciary in crimes and reserves that Power to themselves via a jury, when a court usurps the Power, it acts without jurisdiction. This court acted without jurisdiction when imposing a sentence upon Pelchat that exceeded what the Guidelines stipulated for the conduct admitted or proven to a jury beyond a reasonable doubt. In Mistretta vs. United States, 488 U.S. 361, 413, the Court said (dissenting opinion of Justice Scalia): The "'Guidelines' ... have the force and effect of laws, prescribing the sentences criminal defendants are to receive. A judge who disregards them will be reversed." The 8th Circuit in U.S. vs. Mooney, 2004 WL 1636960 recognized that even the "guideline commentary is binding on federal courts" at 16. Surely this reasoning follows through to the guidelines themselves.

Applying this to the case at hand, when the Court exceeded the power it was granted by the Constitution, and found that Petitioner was guilty of conduct that he did not admit, the remedy is to delcare as void that portion of the judgment that was in excess of the Court's lawful and constitutional jurisdiction. In In re Bonner, 151 U.S. 242, 257-258, the Court said:

> "There has been a great deal said and written ... as to the jurisdiction of the courts in criminal cases.... It is plain that such court has jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by law under its jurisdiction [as stipulated in Artilce III, §2, Clause 1, i.e., "all Cases in Law and Equity, arising under this Constitution, the Laws of the United States, and Treatis made']..., and in rendering judgment, the court keeps within the limitations prescribed by the law [as limited in Article III, § 2, Clause 3, i.e.,

> "[t]he Trial of all Crimes ...shall be by Jury"] .... When the court goes out of these limitations, its action, to the extent of such excess, is void... If the offense be a felony, the accusation in the federal court must be made by a grand jury summoned to investigate the charge of the public prosecutor [as provided in Amendment Five, Clause 1, i.e., "[n]o person shall be held to answer for a ... crime, unless on a presentment or indictment of a Grand Jury"].... When the indictment is found ... the court must proceed to trial by a jury, except in the case of an accused's confession [as required by Article III, § 2, Clause 3 and Amendment Six, i.e., "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury"]. It cannot then proceed to determine the issue any other way. When the jury have rendered their verdict, the court has to pronounce the proper punishment upon such verdict; and the law, in prescribing the punishment, either as to the extent or mode or the place of it should be followed. If the court is authorized to impose imprisonment, and it exceeds the time prescribed by the law, the judgment is void for the excess."

Hence, the imposition of punishment for conduct that was not "confess[ed]," and not proven before a jury beyond a reasonable doubt, exceeds the jurisdiction of the Court. The conduct giving rise to the added sentence was an element of an entirely separate offense and/or an aggravating element neither admitted nor proven beyond a reasonable doubt. This makes that portion of the sentence (set forth more particularly hereunder) **"VOID."** A void judgment cannot be relied upon by anyone. It can be challenged collaterally. This is true both in civil and criminal cases.

Petitioner wishes to make very clear that by alleging that the Court lacked jurisdiction, he intends no reflection on the integrity and motivation of the Court. The absence of jurisdiction is not a moral breach, merely a legal one. When the Seventh Circuit decided Citizens For Beter Enviroment vs. Steel Co.,

90 F 3d 1237 (7th Cir. 1996), they made an error as to both their and the lower court's jurisdiction. The Supreme Court didn't question their integrity when it reversed them. It said, in Steel Co. vs. Citizen's For a Better Enviroment, 523 U.S. U.S. 83, 94-95:

> "[J]uidicial action [beyond the bounds of constitutional authorization] ... offends fundamental principles of separation of powers.... 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiciton is the power to delare the law, and when it ceases to exist, the only function remaining to the court is that announcing the fact and dismissing the cause.' Ex parte McCardle, 7 Wall 506, 514, 19 L. Ed 264 (1869) 'On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first of this court, and then of the court, and then of the court from which the record comes. The question is one the court is bound to ask ... itself, even when not otherwise suggested, and without respect to the relation of the parties to it.' Great Southern Fire Proof hotel Co. vs. Jones, supra. at 453, 44 L. Ed 842, 20 S. Ct. 690. The requirement that jurisdiciton be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' Mansfield, C. & L. M. R. Co. vs. Swan, 111 U.S. 379, 382, 28 L. Ed 462, 4 S. Ct. 510 (1884)."

The cause in Steel Co. had considerable merit but that still did not cut it against a jurisdictional challenge. The concluded:

> "However desirable prompt resolution of the merits may be, **it is not as important as observing the constitutional limits set upon courts in our system of separated powers.**" (Id., at 110) (emphasis added)

Counsel had an obligation to object to the imposition of a sentence based upon conduct not admitted or proven to a jury. However, whether or not counsel objected, § 2255 provides a remedy when a court exceeds it's jurisdiciton:

> "A prisoner in custody under a sentence of a court established by Act of Congress [as all federal courts except

> the Supreme Court are; see Article III, § 1] claiming the right to be released upon ground that the sentence was imposed in violation of the Constitution or laws of the United States, **or that the court was without jurisdiction to impose such sentence,** or that the sentence was in excess of the maximum authorized by law [including sentences greater than set in the relevant Guidelines], or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." (2 U.S.C. § 2255, ¶ 1) (emphasis added)

As for a remedy, Bonner leaves no question: "**The judgment is void for the excess.**" (Id., 151 U.S. at 258) Boswell vs. Otis, 50 U.S. 336, 348, says: "When the record of a judgment is brought before the court collaterally, **it is always proper to inquire whether the court rendering the judgment had jurisdiction.**" "**Proceedings of the court beyond their jurisdiction are VOID.**" (Id., at 350) In Elliot vs. Peirsol, 26 U.S. 328, 340-341, the Court said:

> "Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause; and wheather its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other Court. **But, if it act without authority, its judgments and orders are regarded as nullities. They are not simply voidable, but simply void**.... [T]he jurisdiction of any Court exercising authority over a subject, may be inquired into in every Court."

In Voorhees vs. Jackson, 35 U.S. 449, 474-475, the Court said:

> "If not warranted by the constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under colour of law, which can properly be deemed to have been done coram non judice; that is. **By persons assuming the judicial function in the given case without lawful authority**.
>
> "The line which separates error in judgment from the usurpation of power is very definite; and is precisely that which denotes the cases where a judgment or decree is re-

> versible only by an appellate court [as is an error of judgment], or **may be declared a nullity collaterally** [as in cases where no jurisdiction existed or the jurisdiction was exceeded or the Power reserved under the Constitution to the People via a jury in criminal caes was usurped]." (All emphasis added)

If the "judgment for the excess is void" (Bonner, 151 U.S., at 258), and the act of finding guilt without either a jury determination beyond a reasonable doubt or admission constitutes a usurpation of the Power the People reserved over the judiciary in criminal cases, hence renders that portion of the sentence (judgment) "a nullity" (Voorhees, 35 U.S. at 475), 31 AmJur2d, on Judgment helps:

> **"Void Judgments"**
>
> "A void judgment is one that, from its inception, is a complete nullity and without legal effect, and one which must be distinguished from one which is merely erroneous, irregular, or voidable....
>
> "[I]t is open to attack or impeachment in any proceeding, direct or collateral, and at any time or place, at least where the invalidy appears on the face of the record."

In the instant case, the record is clear that the Court exceeded its jurisdiction. When the sentencing transcript record is analyzed, it shows that the Court determined that Pelchat was guilty of conduct that was neither admitted nor proven beyond a reasonable doubt. The "judgment for the excess is void."

The Supreme Court has determined that whereas the Constitution grants jurisdiction to federal judges to try criminal cases only before a jury in absence of a confession, that right attaches only when the crime is more than a "petty" offense. This brings the jurisdictional challenge under Article III, § 2, Clause 3

together with the rights of a defendant under the Sixth Amendment, Clause I. In Bloom vs. Illinois, 391 U.S. 194, 195, the Court said:

> "Article III, § 2, of the Constitution provides that 'the Trial of all Crimes, except in the Cases of Impeachment, shall be by jury....' The Sixth Amendment states that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury....' The Fifth and Fourteenth Amendments forbid both the Federal Government and the States from depriving a person of 'life, liberty, or property, without due process of law.'"

In Dyle vs taylor Implement Mfg. Co., 391 U.S. 216, 220, the Court said:

> "This Court has not had occasion to state precisely where the line falls between punishments that can be considered 'petty' and those that cannot be.... [I]t is clear that a six-month sentence is short enough to be 'petty.'"

In Frank vs. United States, 395 U.S. 147, 148-149, the High Court said:

> "The most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission...
>
> "In ordinary criminal prosecutions, the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion...
>
> "The government concedes that a jury trial would have been necessary in the present case if petitioner had received a sentence in excess of six months.... We agree."

In Baldwin vs. New York, 399 U.S. 66, 69, the Court stated:

> "The question in this case is whether the possibility of a one-year sentence is enough in itself to require the opportunity for jury trial. We hold that it is."

The Supreme Court has reiterated the above standard many times. (See Blanton vs. North Las Vegas, 489 U.S. 538, 542; and Lewis vs United States, 518 U.S. 322, 326). In light of the lengthy history of interpreting Article III, § 2, Clause 3's and

the Sixth Amendment's right of a jury trial for all but "petty" offenses, why did this Court believe it unnecessary to leave to the jury the question of guilt in relation to the uncharged offenses which resulted in substantially more onerous punishment than one defined as "petty"? The Court lacked the jurisdiction to find guilt and impose sentence for the uncharged conduct.

## STANDARD OF REVIEW

Mr. Pelchat, hereinafter "Pelchat or Petitioner," is proceeding pro se and is unskilled and unsophisticated in the ways of law and pleadings and therefore invokes the liberal pleadings doctrine as provided in Haines vs. Kerner, 404 U.S. 519 (1972) and White vs. Wyrich, 530 F. 2d 818 (8th Cir. 1976) (pro se petitions must be interpreted liberally and construed to encompass any allegations stating federal relief). Pelchat is not invoking the liberal pleadings doctrine lightly or without cause. Pelchat fervently believes that he has continuously raised legitimate concerns that have not been recognized by the Courts due mainly to Pelchats inability or ineptness in presenting the issues in a cognizable manner. Pelchat humbly asks this Court to overlook his shortcomings and interpret liberally the issues raised herein.

**With no Plea Agreement with the Government (or the Court), Pelchat did not plead guilty to 21 U.S.C. § 841(b)(1)(B) when his plea was entered before Apprendi vs. New Jersey, 530 U.S. 466 (2000) was decided.**

This issue is of extreme importance as Pelchat's sentence was affirmed by the 8th Circuit Court of Appeals based on the finding that Pelchat "pleaded guilty to conspiracy to distribute in excess of 100 kilograms of marijuana." This was the only reasoning in the opinion that had relevance to the issue of quantity that Pelchat has contested and sought to litigate in the District Court, and on appeal.

At the District Court the Government asserted that Pelchat had pled guilty to 475 pounds of marijuana,

> "The count that Mr. Pelchat plead guilty to was 475 or --" S. Tr. p. 57, 6-7; "He pled guilty to 475 pounds of marijuana" S. Tr. 59, 15-16.

The Court at sentencing also asserted that the plea was to 21 U.S.C. § 841(b)(1)(B),

> "I tell you, Joseph Charles Pelchat, that you were charged in Count 1 of an indictment, with conspiracy to distribute a **quantity in excess of 100 kilograms of marijuana**, in violation of 21 U.S.C. §§ 841(a)(1) and 846. **Based upon your plea of guilty**, it is considered and adjudged that you are guilty of that offense." S. Tr. page 69-70, 24-25 and 1-5.

The assertion of both the government and the Court are clearly contradicted by the record of the plea proceedings.

> "You are charged, as I understand it, today -- which means I don't know about tomorrow -- but today you are charged in a single-count Indictment that says that for a relatively short period of time, from late December until early this year, you and some other people were involved in a conspiracy to possess and possess with intent to distribute **a certain amount of marijuana.**" P. Tr. p. 42, 16-22 and "With all of those things in mind, I tell you, Joseph Charles Pelchat, that you have been charged by Indictment with a conspiracy to possess with intent to distribute a **quantity of marijuana**. As to that charge, how do you plead, guilty

or not guilty?" "Guilty, your Honor." Pl. Tr. p. 49, 11-16.

The main arguments that Pelchat has concerning his 5th Amendment right to indictment and, concurrently, which elements of the offense was admitted by his guilty plea alone requires an analysis of the indictment, Rule 11 of Federal Criminal Rules of Procedure, Ex post facto, and the specificity requirements of the indictment after Apprendi and Blakely vs. Washington, 124 S. Ct. 2531 (2004). (6th Amendment issues relevant to the plea, finder of fact and, standard of proof shall be addressed in next section)

A. Indictment

Pelchat pled guilty on April 18, 2000. Pelchat and the government were unable to reach a plea agreement, therefore, the guilty plea was entered, and accepted, with no plea agreement limiting Pelchat's (or the governments) arguments concerning sentencing factors used to determine the sentence.

Quantity of marijuana was a sentencing factor to be decided by the court at sentencing at the time of Pelchats plea. The Eighth Ciruit had long held (as did every other circuit) that the sentencing provisions of 21 U.S.C. § 841(b) were not elements of the unlawful acts defined in § 841(a). U.S. vs. Abanatha, 999 F. 2d 1246, 1251 (8th Cir. 1993); U.S. vs. Wood, 843 F. 2d 1382, 1388 (8th Cir. 1987). "Neither § 841(b)(1)(A) nor § 841(b)(1)(B) describe a substantive offense; they are merely sentence-enhancement statutes.... The Substantive offense to which jeopardy

attaches is conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1)." U.S. vs. Holt, 142 F. 3d 760, 762 (8th Cir. 1998). Similarly, this principle applied when "**the indictment erroneously identified the charged offenses as violations of the penalty provisions of subsection 841(b)(1) as well as subsection 841(a)(1).**" U.S. vs. Luster, 896 F. 2d 1122, 1126 n.2 (8th Cir. 1990). (emphasis added) This is exactly the case here.

Although an indictment should list only § 841(a)(1) as a legal basis for a charge, any mention of § 841(b) penalty provisions would be "merely a technical error." Id.

Therefore, because drug quantities was not an element at the time of the plea, the District Court erred when it sentenced Pelchat under 21 U.S.C. § 841(b)(1)(B) **based upon his plea of guilty** and, the Court of Appeals erred when it **relied on the guilty plea itself** to affirm Pelchat's sentence.

Even after Apprendi, the reasonable jurists of the 9th Circuit recognize that a guilty plea in and of itself does not admit a drug quantity allegation contained in the indictment. U.S. vs. Thomas, 355 F. 3d 1191 (9th Cir. 2004).

Pelchat is aware of the slight differences in the treatment of 841(b) between the 8th and 9th Circuits, however, in many respects Thomas is analogous to the case at bar and is illustrative of many of the points being raised.

The 9th Circuit held, as Pelchat has shown was the state of

the law at the time of his plea in the 8th Circuit, that "Drug Quantity is not an element under 21 U.S.C. § 841," at 1194 therefore "Thomas' plea did not necessarily admit the drug quantity allegation contained in the indictment." at 1195. It must be reiterated that this is after Apprendi, where 841(b) is properly charged in the indictment and Rule 11 requires the Court to explain the governments burden and defendants rights in relation to the charges, which was not done, nor required to be done when Pelchat pled guilty. Relying on the guilty plea alone to justify sentence or affirm sentence was error.

B. Ex post facto

As stated, the government and Pelchat were unable to reach a plea agreement and one of the main reasons that Pelchat pled guilty to the court with no agreement limiting his arguments on sentencing factors was because he wished to reserve litigation on the sentencing factor of quantity. Justice Breyer in his dissenting opinion in Blakely recognized that with regard to drug quantity determinations before Apprendi that the sentencing hearing was "the only hearings they were likely to have." This is exactly what Pelchat sought.

Little more than 2 months after Pelchat pled guilty Apprendi was decided. Along with the recent decision of Jones vs. U.S., 526 U.S. 227, 243 n.6 (1999), taken together, the effect on 21 U.S.C. § 841(b) was that in order to sentence a defendant to the

enhanced statutory maximum penalties of 841(b)(1)(A) and (B) the drug type and quantity must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt.

In essence the penalty provisions of 841(b) were "criminalized" (became an essential element of a crime). A change in law that "criminalizes" facts or allegations that holds a defendant criminally responsible for facts or allegations that were not, in and of themselves, criminal at the time of the "offense" is a violation of the principles of ex post facto. The penalty provisions of 841(b) were not a crime or an essential element at the time of Pelchat's plea, the change in law worked to the detriment of Pelchat in holding **after** the change of law that his plea was to the newly criminalized element. To allow the government the "windfall" of the change in law that worked to Pelchat's detriment is error and is a violation of the principles of ex post facto.

The government undercut it's own argument that Pelchat pled guilty to the essential element of quantity when the government at the same time argued that the information filed under 21 U.S.C. § 851 did not charge an offense, where in the information the government also included the charge under § 841(b)(1)(B).

Both the indictment and the information were charged pre-Apprendi so if 841(b)(1)(B) is an essential element in one, then it has to be an essential element in the other, or not an essential element in both. While it may be argued that 851 is

not a charge of a criminal offense, in and of itself, the inclusion of 841(b)(1)(B) is the inclusion of a criminal offense in the 851. Pelchat has been sentenced as if 841(b)(1)(B) is an essential element of an offense in the indictment and concurrently a mere sentencing factor under 851. It would be fundamentally unfair and defy common sense for the court to allow the government the benefit of having it both ways at the same time.

C. Rule 11

Pelchat's guilty plea was not knowing, intelligent, or voluntary as required by the Constitution and Rule 11 of the Fedral Rules of Criminal Procedure because the court did not inform him, and he was not aware that the quantity of marijuana was an element of the offense. (Pelchat also did not know that by pleading guilty that he would also be pleading guilty to 21 U.S.C § 851, and to the career offender provisions of the U.S.S.G.).

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, see, e.g., Johnson vs. Zerbet, 82 L. Ed 1461, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. Smith vs. O'Grady, 85 L. Ed. 859.

Pelchat surely did not understand the nature of the constitutional protections that he was waiving because at the time

of the plea he did not have the constitutional protections to the penalty provisions of § 841(b) to waive, nor did the court in any way inform Pelchat of alleged waiver.

Pelchat also had an incomplete understanding of the charge, how could he possibly have had a complete understanding of the charge when the nature of the charge changed **after** he pled guilty, yet he was still punished for the later change in law.

Clearly the plea to 841(b)(1)(B) could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless Pelchat received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Smith vs. O'Grady at 864.

In Henderson vs. Morgan, 49 L. Ed. 2d 708 (1976) the defendant, like Pelchat was not aware of an element of the offense and the Supreme Court held that the guilty plea was involuntary and that the judgment of conviction was entered without due process of law. In Morgan the case turned upon an element that he merely was not informed of, where in this case Pelchat was held responsible by his alleged plea to an element that **was not** an element. Pelchat believes the following quote to be on point in this case.

> "The constitutional rule relevant to this case is that the defendant's guilt is not deemed established by entry of a guilty plea, unless he either admits that he committed the crime charged, **or enters his plea knowing what the elements of the crime charged are.**" at 118 (emphasis added)

Pelchat is aware of the Eighth Circuits decision in U.S. vs. Perez, 270 F. 3d 737 (8th Cir. 2001) which dealt with a similar claim as presented here, which resulted in an unfavorable decision for Perez.

However, the facts of this case greatly differentiate this case from Perez and the result should be in favor of Pelchat. Tracking the order in the opinion, the first difference is that Pelchat did raise the issue in the District Court before sentencing in DEFENDANTS MOTION TO SENTENCE DEFENDANT UNDER 21 U.S.C. § 841(b)(1)(D), (the motion was pro se and though the exact words did not say Rule 11, it was clear that Pelchat asserted that he did not knowingly, intelligently, and voluntarily plead to 841(b)(1)(B) or "waive" the element of quantity) and raised the issue again on appeal. The District Court, and Court of Appeals never ajudicated the issue. This is not Pelchat's fault and the standard of review should be de novo. To hold otherwise would be unfair to Pelchat because he sought to litigate the issue in the District Court, and would open the door for Appellate Courts to not ajudicate issues until the standard of review is unfavorable to defendants.

The next difference is that at the District Court level, and on appeal, Pelchat showed that under the law, inclusion of the penalty provision in the indictment was erroneous.

> Thirdly, in Perez, "The record reveals that at the plea hearing, the court fully advised Perez of the nature of the charge, **including the quantity of controlled sub-**

> **stances alleged in the indictment** and the government's burden to prove all elements of the offense beyond a reasonable doubt." (emphasis added) at 740.

In the case at bar there was no plea agreement. The indictment was not read, nor did Pelchat waive reading of the indictment. Pelchat was informed of the nature of the offense only once before the formal plea, which was described as "a conspiracy to possess and possess with intent to distribute **a certain amount of marijuana.**" At the formal change of plea the court described the offense to which Pelchat was offered a plea as such,

> "With all of those things in mind, I tell you, Joseph Charles Pelchat, that you have been charged by Indictment with a conspiracy to possess with intent to distribute a **quantity of marijuana. As to that charge**, how do you plead, guilty or not guilty?" To which Pelchat pled, "Guilty, your Honor." (emphasis added) Pl. Tr. p. 49, 11-16.

Pelchat was not informed of any quantity beyond § 841(b)(1)(D).

Fourth, as in Perez, the court informed Pelchat of possible penalties which would correspond with the statutory penalty provisions of 21 U.S.C. § 841(b)(1)(B), but Pelchat's understanding (because his attorney had explained, correctly at the time, that the actual sentence would be determined by the court at the sentencing hearing) was that the possible penalties were merely the government's position on sentencing.

That this understanding was correct has support not only from law, but by the facts and records of this case. There was no plea agreement so there was no agreement to any penalty, quantity, or any other sentencing factor. The Court asked the

government for **its** calculations of sentence under the guidelines, which, with acceptance of responsibility was 262 to 327 months. P. Tr. Pages 46, 47.

The Court then asked Pelchat if he had gone over the chart with his lawyers to which Pelchat responded "Yes, your Honor." P. Tr. P. 47.

> The Court then went on to ask Pelchat's attorney if he had "pointed that out to your client on the chart?", to which he responded "I've done that extensively, and I've submitted a memorandum discussing that to him. So he's very aware of those calculations -- which are exactly correct." P. Tr. P. 48, 5-9.

Pelchat does not have a copy of the alleged memorandum, or remember receiving it, but other then that point, what his attorney said is true. However, what the record does not show, and is equally true, is that Pelchat and his attorney had went over **many** scenarios of possible guideline calculations in which **any one of those calculations** would have been **"exactly correct" depending upon the findings of the court at sentencing.** It is only common sense, what attorney does not discuss best and worst case scenario with his client? That is why Pelchat pled to the court.

The veracity of Pelchat's claims are easy to ascertain by merely examining the record. Pelchat and his attorney discussed pleading guilty at the recusal hearing (which turned into the change of plea hearing) several days before the hearing. At that time the information pursuant to 21 U.S.C. § 851 had not been filed.

For argument sake, assuming the government won on every issue except acceptance of responsibility, the statutory penalty would have been 5 to 40 years, which under the career offender provisions would have called for a base offense level of 34, minus 3 points at category 6, and the guideline range would be 188 to 235 months. This was worst case scenario at the time of discussion (851 was not filed until the day before plea and no one knew, even the court, that the government had filed it until the actual hearing; see P. Tr. P. 43) **unless the court at sentencing found more than 1000 kilograms of marijuana.** This fact drives home the point that Pelchat's understanding was correct and, that any number of calculations would have been "exactly correct" depending upon the findings of the court at sentencing and then with no plea agreement (legally, even with one) the judge is not bound by the governments position on sentencing.

All these points are solidified by the fact that at the conclusion of the Rule 11 colloquy dealing with the statutory sentencing range the court informed Pelchat;

> "So we're looking at somewhere between 28 months on the bottom end and maybe as long as the rest of your life. Understood? "to which Pelchat responded, "Yes, your Honor." P. Tr. p. 48, 10-14.

This sentencing range would correspond with any of the penalty provisions of 21 U.S.C. § 841(b)(1)(A)-(D) and also be consistant with the law in effect at the time of the plea that drug type and quantity would be determined by the court at sentencing. Also, at this time most plea agreements contained the

proviso that a defendant could not withdraw his plea of the court was to find differently than the amounts stipulated to in the plea agreement. Therefore, with no plea agreement the government's position on sentencing was not binding on the court, nor on Pelchat.

> Fifth, "At his sentencing hearing, Perez made no assertion that the quantities for which he believed he had sentencing liability were less than the quantities required to trigger the enhanced statutory penalties of § 841(b)(1)(B)." at 740.

At the plea hearing Pelchat did not admit to any quantity of marijuana. (A full discussion of this subject shall be in the next section). Before Sentencing, Pelchat argued that his sentencing liability was under § 841(b)(1)(D) in his pro se motion, DEFENDANT'S MOTION TO SENTENCE DEFENDANT UNDER 21 U.S.C. § 841(b)(1)(D). At sentencing, as Pelchat illustrated in ground 7 of the 2255 motion, Pelchat intended to argue his motions to the court, if necessary, but believed that he was precluded by the denial of **all** of his motions as not cognizable. Pelchat had his attorney address the court specifically to make sure that they were preserved for appellate purposes. See; ground 7, and S. Tr. pgs. 61, 18-25, and 62, 1-4. It is clear that Pelchat, unlike Perez, disputed quantity before, and at sentencing.

Sixth, the court in Perez relied on Bousley vs. U.S., 523 U.S. 614:

> "Additionally, where the indictment states the elements to be proven, 'such circumstances, standing alone, give rise

to a presumption that the defendant was informed of the nature of the charge against him.'" at 618.

Here, as Pelchat has argued, the elements to be proven stated in the indictment were 21 U.S.C. §§ 841(a)(1) and 846. The presumption (which was actually a fact, not a mere presumption) was that drug type and quantity were to be decided by the court at sentencing.

That was the universal understanding at the time by attorneys (the court can do anything they want with amounts, as long as they think that it is more likely than not) and the scourge of defendants (whatever anyone says, you will be sentenced for it. It does not matter if you catch them in lies, or what their motivation is, they will always be believed if it get's you more time). In toned down language, that was the stark reality of what defendants were told by attorneys, and what defendants seen and expected from the courts. Pelchat only uses the above to illustrate the fact that most drug defendants though not in a sophisticated way, basically understood that drug type and quantity was decided by the court, and that the presumption in Bousley is not based in reality from a defendants perspective.

Regardless, that presumption does not apply in this case as Pelchat has demonstrated that he understood that quantity was a sentencing factor to be determined by a preponderance of the evidence by the court.

Pelchat finds that this is one of the instances that he must expand on the ineffective assistance of counsel. Along with the

issues included in Motion pursuant to 28 U.S.C. § 2255 and the opening Statement, Pelchat cannot understand his attorney agreeing with the governments position on sentencing at the plea. (and at sentencing)

There was absolutely no strategic purpose to his action. He knew the state of the law at the time. He had discussed with Pelchat the various possible penalties from 0 to 5 years, (without 851 filed and a finding of less than 100 kilograms found by the court) all the way up to possible life. (if Pelchat was to go to trial). It is unnecessary to go into each scenario, suffice it to say that there was at least a dozen "plausable" scenarios and several "likely" scenarios.

There was no evidence or testimony entered into the record on quantity of marijuana which would prompt a concession. Attorney had not yet seen the 851 information, even if he believed that Pelchat had the requisite prior conviction(s), adversarial testing would require that he made sure that the government's information was correct or explore if there were altermative grounds for argument before conceeding the substantial penalty the 851 carries. The P.S.I. had not been prepared, and as above, there was no information yet entered into the record by the government to establish Pelchat as a career offender. All the attorney needed to do to protect his clients interests was to defer sentencing issues until the P.S.I. was complete and/or the sentencing hearing.

D. Specificity requirements of the indictment after Apprendi and Blakely vs. Washington, 124 S. Ct. 2531 (2004).

The indictment charged a violation of 21 U.S.C. § 841(b)(1)(B), in excess of 100 kilograms of marijuana. It was a one count indictment that charged a 5 day conspiracy that consisted of one act and one quantity of marijuana. Throughout the course of this case Pelchat has had to defend against quantities of marijuana of 472, 473, 475, 500, and 580 pounds of marijuana, all the way up to 2800 and 2835 kilograms of marijuana, which is well in excess of 841(b)(1)(A) quantities. Further, he has had to defend against an alleged plea to some nebulous quantity "in excess of 100 kilograms" that has yet to be defined.

That all this (and more when one considers that Pelchat was not charged by indictment for 21 U.S.C. § 851 and career offender) can come from a one count indictment that consisted of one act and one ever-changing quantity causes one to wonder what exactly should the specificity requirements for an indictment be when the the present requirements make the defense of the indictment the same as trying to defend a moving target.

The indictment in this case is insufficient post-Apprendi because it did not charge a specific quantity or overt act. The only record of the Grand Jury's proceedings is the Indictment. Although some circuits have ruled that only threshold quantities of drugs need to be alleged in the indictment, a distinction should be made in such cases where only an estimation as to the

precise amount is possible. In the instant case, where the overt act is known and the Government is in possession of the alleged drugs, those facts (overt act, specific quantity) should be presented to the Grand Jury and included in the Indictment.

Case law and Rule 7 of the Federal Rules of Criminal Procedure suggest that mere statutory citation (or a description of the appropriate penatlty provision) may not be sufficient to impose a sentence beyond the offense simpliciter. To exceed the statutory maximum provided by 21 U.S.C. § 841(b)(1)(D) "the government must charge the facts giving rise to the increased sentence in the indictment, and must porve those facts to the jury beyond a reasonable doubt." U.S. v. Aguayo-Delgado, 220 F. 3d 926, 933 (8th Cir. 2000). Fed. R. Crim. P. Rule 7(c)(1) states that an indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged." The indictment must also "state for each count the...citation of the statute...which the defendant is alleged therein to have violated." The two requirements are separate and are not a restatement of one another. U.S. vs. Camp, 541 F. 2d 737, 740 (8th Cir. 1976).

Black's Law Dictionary, 7th ed., defines what is required to be charged in the indictment in order to exceed the maximum sentence provided by 21 U.S.C. § 841(b)(1)(D):

> **fact.** 1. Something that actually exists, an aspect of reality ...2. An actual or alleged event or circumstance, **as distinguished from its legal effect, consequence, or interpretation...**3. An evil deed; a crime.

Because a government agent actually gave the alleged marijuana to Pelchat, and because Pelchat was arrested at the same time, there is no reason that the essential facts could not have been presented to the Grand Jury. From the face of the Indictment, however, there is no way of knowing whether such facts were indeed presented. Only the words of the Indictment give evidence of whether the Grand Jury considered the actual amount of marijuana and included that essential element in the Indictment.

Although the Indictment charges Pelchat with a violation of 21 U.S.C. § 841(b)(1)(B), such a statement adds no factual information as to the alleged overt act itself. Rather, it declares a legal basis for punishing the alleged acts, but does nothing to describe the act. Stated another way, the Indictment is of scant help in decided whether the Grand Jury considered the actual amount of marijuana in the government's possession to be an essential element of the offense. "Even if some shade of factual inference were warranted, it would not satisfy the standard of Hamling vs. United States, 418 U.S. 87 (1974), that the 'words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense...'" Camp, 541 F. 2d at 740.

In U.S. vs. Hollingsworth, 257 F. 3d 871 (8th Cir. 2001) (overturned by U.S. vs. Diaz, 296 F. 3d 680 (8th Cir. 2002) to the extent that U.S. Sentencing Guidelines § 5G1 is discretionary,

necessitating remand when an Apprendi violation can be cured by running sentences consecutivelely), the defendant was charged in a three count Indictment with two counts of attempted manufacture of 100 grams or more of methamphetamine, and one count of attempted manufacture of 5 grams or more of methamphetamine. None of the three counts attributed a specific drug quantity to the defendant. "The government conceded at oral argument, and we agree, that an Apprendi violation occurred because the appellant was sentenced to a term of thirty-two years, a sentence which exceeds the statutory maximum allowed by 841(b)(1)(C) for meth offenses without a specified drug quantity." Id. at 876, citing to Aguayo-Delgado, 220 F. 3d at 993.

Blakely vs. Washington, 124 S. Ct. 2531 (2004) will define the specifity requirements of an indictment just as Apprendi did even though both cases were about Sixth Amendment right to trial by jury. Blakely merely defines the meaning of "prescribed statutory maximum."

> "This case requires the Court to apply the rule of Apprendi vs. New Jersey, 530 U.S. 466, 490, that 'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" id.

Which was defined as follows;

> "The relevant statutory maximum for Apprendi purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." id.

Blakely reasoned that unlike an indeterminate sentencing

scheme, under a determinate sentencing scheme, such as the U.S.S.G.,

> "the defendant has a **legal right to a lesser sentence** -- and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." id. (emphasis added)

Applying this reasoning to 21 U.S.C. § 841(b)(1)(A) - (D) it is clear that mere statutory citation (as in this case) is not sufficient to imposed a sentence beyond the offense simpliciter. Without any other sentencing factor(s) considered, there are 17 base offense levels for controlled substances and quantity that increase in increments of 2 that starts at level 6 and ends at level 38.

The corresponding statutory penalties coincide as follows: 38, 36, 34, and 32 coincide with 841(b)(1)(A); 30, 28, 26, and 24 coincide with 841(b)(1)(B); 22-6 conincide with 841(b)(1)(C) and (D) with (C) being the offense simpliciter for most "common" drug offenses, except marijuana for which the offense simpliciter is (D).

Under Blakely a specific quantity, along with the statutory penalty will have to be charged in the indictment because the defendant has "a legal right to the lesser sentence," **even within** the statutory penalty range charged because of the various penalties under the U.S.S.G. that a defendant is entitled to. Cases after Apprendi ruled that quantity, as any other material fact in a criminal prosecution, must be charged in the indictment. There is no reason why it would not be the same under Blakely.

Along with the rest of the argument in this section, the specificity requirements of Russell vs. United States, 8 L. Ed. 2d 240 (1962) now apply to 21 U.S.C. 841(b). Russell ruled that the criteria by which the indictment is to be measured are, first, (relevant here).

> "whether the indictment 'contains the elements of the offense intended to be charged, and **sufficiently apprises the defendant of what he must be prepared to meet.'"** (emphasis added) (The second deals with double jeopardy) at 250-251.

Currently, indictments do not meet this criteria because even under the same statutory penalty provision, without a specific quantity allegation, a defendant does not know what he must be prepared to meet for the different penalties under the U.S.S.G.. Therefore;

> "It is an elementary principle of criminal pleadings, that where the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, - it must **descend to particulars."** at 251. (emphasis added) and;

> "In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute **the offense intended to be punished;"** at 251. (emphasis added)

At that time of indeterminate sentencing the Russell Court recognized the connection between the indictment to the punishment, specifically the indictment must **descend to the particulars** for **the offense intended to be punished.** Under the determinate sentencing scheme of today, these requirements are more relevant

than ever. The indictment was insufficient to defend against the offense intended to be punished in this case.

**Pelchat did not admit to § 841(b)(1)(B) quantities (or any quantity at all) nor has (b)(1)(B) quantities proved beyond a reasonable doubt.**

Though the District Court sentenced Pelchat based upon his alleged plea to 21 U.S.C. § 841(b)(1)(B) and the 8th Circuit Court of Appeals affirmed Pelchat's sentence solely based upon his alleged guilty plea to 841(b)(1)(B), it has been asserted by the government, and apparently accepted by the District Court, that Pelchat has admitted to 841(b)(1)(B) quantities.

Pelchat has consistantly maintained that he had not (and could not) admit to any quantity at the District Court and on appeal. He has also maintained at the District Court and on appeal that any quantity, much less (b)(1)(B) quantities, have not been proven beyond a reasonable doubt.

The main arguments that Pelchat has concerning his 6th Amendment right to jury trial and concurrent right to proof beyond a reasonable doubt requires overcoming attorney's stipulation to quantity, and position on quantity in PSI and at sentencing, analysis of the impact of Rule 11 of Federal Criminal Rules of Procedure, Rule 32 of Federal Criminal Rules of Procedure, change in standard of proof after Apprendi, Statutory Law and U.S.S.G. commentaries in determining actual weight of marijuana, admissability of evidence, normal rules of evidence as applied to

quantity after Apprendi, chain of custody, individualized findings, and relevant guideline range under Blakely if court was to find attorney admissions binding.

A. Attorney Stipulation

At the change of plea hearing, after collequy between the Court and Pelchat, where it had already been established that Pelchat could not order what he wanted, "It does not really work like that. It is kind of what he can give me."; that he did not know what quantity he could expect, "Five hundred, a thousand -- I don't -- but it's what he can get me. **I don't know.** "(emphasis added); that he did not know if there was "actually some marijuana obtained?", "I don't know, your Honor." or "Did the government seize any or is this an effort simply to get some?", "They -- I never seen it. It was in boxes." see generally P. Tr. pgs. 51-53.

After all this had been established, that Pelchat did not, and could not, admit to a specific quantity or 841(b)(1)(B) quantity, the **government** asked **Pelchat's Attorney** to stipulate as follows;

The Court: Any questions, counsel?
Mr. Lackner: Yes, your Honor.
First, Mr. Meshbesher, would you stipulate that if we went to trial, we could prove that it was 500 pounds of marijuana tested that was actually seized that day?
Mr. Meshbesher: Yes, I would stipulate to that. Your Honor, just for the record, Mr. Pelchat was talking to an individual down in Texas who had gotten caught with 500 pounds, and he cooperated with the --
Mr. Lackner: Your Honor, I think Mr. -- well, I'm not sure

the point Mr. Meshbesher wants to make, but--

Mr. Meshbesher: The person who cooperated with the government proceeded to get -- make a deal with Mr. Pelchat, and the 500 pounds, I would stipulate that -- were in the possession of the government and they were about to be transported and given to Mr. Pelchat for distribution purposes.

The Court: And it was his intention to receive those, I take it?

Mr. Meshbesher: Absolutely.

The Court: Okay

Pelchat adopts his argument differentiating this case from Perez presented previously and turns now to relevant case authority specifically relating to stipulations. U.S. vs. Stalder, 696 F. 2d 59 (8th Cir. 1982) differentiated stipulations that effectively admitted guilt from actual guilty pleas that require the full protections of Rule 11 procedures.

> The Court of Appeals held, relying on U.S. vs. Lawriw, 568 F. 2d at 105 n. 13, "'an inquiry as thorough as that prescribed by Fed. R. Crim. P. 11 is not required before the District Court accept a stipulation of facts establishing guilt from a criminal defendant.' The question rather is whether the defendant was sufficiently addressed 'as to the rights that she surrendered as a result of signing the stipulation.' Lawriw establishes the law of this Circuit, and the District Court was correct in relying on it" at 62.

Simply put,

> "The important question is whether the defendant knew what he was doing when he entered into the stipulation." at 62.

The simple answer here is, no. The stipulation was not knowing and voluntary. There are also three key differences between this case and Stalder, one, Stalder discussed with his attorney and had a strategic purpose to his stipulation, two, he **signed** a written stipulation, and three, he was questioned by

his attorney and the court, and the court satisfied itself that the stipulation was knowing and voluntary, and that he understood the consequences of his stipulation.

The 8th Circuits sister Circuit in U.S. vs. Lyons, 898 F. 2d 210 (1st Cir. 1990) also differentiated stipulations that are the "equivalent to a plea of guilty" from actual guilty pleas that require the full panoply of Rule 11 protections.

> The Court held that the proper standard is that the District Judge is to take "special pains to satisfy himself" that the waiver was knowing an voluntary to impress upon the defendant the significance of the choice to proceed by stipulation." at 215.

Once again there are key differences between this case and Lyons in that there was a strategic reason for the stipulation, Lyons signed a written stipulation, and the Court indeed took "special pains to satisfy himself" that the stipulation was knowing and voluntary, all of which cannot be said for this case.

However, these cases are basically about bench trial stipulations. Though they are similar to this case where a stipulation was the equivalent of a guilty plea, it is not clear they are the same, or simply put, on point. Pelchat, simply put, honestly does not know because the stipulation was a part of an actual guilty plea. In this context it was a concession of guilt. The problem here is that the concession to 841(b)(1)B) are relevant to determinations of sentence, not actual guilt. (Complicated further by the change of law after Apprendi) This

appears to be a case of first impression. Perez, while somewhat relevant, is not on point, and is easily overcame by the facts of this case. Because Pelchat is not sure, he is forced to argue (besides Perez) in the alternative.

The only case that Pelchat found that is close because of attorney made concession is U.S. vs. Holman, 314 F. 3d 837 (7th Cir. 2002) where counsel conceeded guilt to 1 count of a 4 count indictment in a strategy to "bolster the case for innocense on the remaining counts", which the court held to be coherent trial strategy.

The court then turned to analyze whether Holman consented to concession because "the manner of its execution in this case greatly concerns us." at 841. The court found that there was no record to indicate defendants consent, (as is the case here) that attorneys performance was deficient under Strickland, and that it constituted a violation of Rule 11.

> "...we think that his counsel's deficient performance was based on a violation of Rule 11's proceedures. ... Holman's counsel essentially gave up the same constitutional rights that Holman would have relinquished had he plead guilty to Count 1 before trial." at 843.

Holman was affirmed though because "defendant suffered no prejudice as result of counsels concession".

In the case at bar, unlike Holman there was no valid strategic reason to concede through stipulation, Pelchat's guilt to § 841 (b)(1)(B). Counsel's concession placed Pelchat at the maximum sentencing range possible. Even the government and the court

recognized this fact.

> "....the government's position is let's take the 475, let's run with that, add that into the guideline calculations and you get to the same place as if we had called all these other witnesses and proven to your satisfaction relevant behavior -- or relevant conduct. The court then stated: I guess the short version is you get to the same number either way."

Pelchat asserts that this is prima facia evidence of prejudice, and that this fact alone constitutes prejudice. (that is not to say this is the only prejudice suffered, as will be shown, by attorney stipulation).

Pelchat never consented to counsels stipulation. As outlined, and averred to under 28 U.S.C. § 1746 in Ground 4 of the § 2255 motion, Pelchat's attorney never discussed, or consulted with Pelchat at any time prior to, or during the plea hearing, the possibility of a stipulation to any quantity of marijuana. Pelchat was completely unaware that his attorney was going to stipulate to any quantity of marijuana, nor did he ever give, implied or otherwise, his attorney permission to stipulate to any quantity of marijuana. Pelchat also did not know that the stipulation was binding upon him and that it was functually equivalent to a guilty plea. As in Holman, Pelchat never consented.

Pelchat at no time ratified the stipulation, a review of the record will clearly show the opposite to be true, that Pelchat himself has challenged the quantity of marijuana at all times.

Pelchat asserts that his attorney's performance was deficient under the standards set in Strickland, Cronic, and Hill

vs. Lockhart. Further, even if Pelchat's Attorney believed that the government had "overwhelming evidence of guilt available," (how this is possible with no evidence submitted on record is beyond Pelchat, and violates the adversarial dictates of Cronic) under Henderson vs. Morgan, where the **petitioner argued** that the prosecutor had "overwhelming evidence", the Supreme Court ruled

> "Nevertheless, such a plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense." at 114.

Such is not the case here, as will be shown, but surely the government would try to "prove" that they had, or have, overwhelming evidence. Further, not only was Pelchat's attorney ineffective under Strickland by failing in his duty to consult with the defendant on important decisions, (his stipulation) he also failed in his duty to keep defendant informed of important developments in the course of the prosecution by not informing Pelchat that the government withdrew their motion for evidentiary hearing. "A government motion for an evidentiary hearing, which was withdrawn...." S. Tr. p. 52, 20-21.

This prejudiced Pelchat in two ways, one, Pelchat did not know that the government had "waived" and "forfeited" their right to "prove up amounts" or at the least, the government "abandoned" their burden. Second, it prejudiced Pelchat because it affected the reliability of the outcome". Had Pelchat known that the government withdrew their motion, Pelchat could have argued the governments "waiver" and would have prepared differently for the

sentencing hearing. As it was Pelchat fully expected an evidentiary hearing conducted at the sentencing hearing.

As was the case in every case but Holoman the stipulation should have been in writing. There is authority from the Local Rules For The District Of Minnesota and the U.S.S.G. that, in any event, the stipulation be in writing.

LR 83.10(a)

> **(a) Plea Agreement and Sentencing Stipulations. At the time of a plea or** the offer of a plea agreement, counsel for the defendant and counsel for the government will submit a written plea agreement and statement of facts. This written submission shall include the maximum potential penalties for the charged offenses, all terms of the plea agreement, and, to the extent possible, **stipulations of fact which address the essential elements of the offense and the relevant sentencing guidelines.** Prior to entry of the plea, counsel for the defendant and counsel for the government shall make every effort to resolve all material disputes in order to minimize the necessity of an evidentiary hearing at the time of sentencing. The parties' resolution of material disputes must remain subject to Court review and acceptance. (emphasis added).

and:

§6B1.4. **Stipulations (Policy Statement)**

(a) A plea agreement may be accompanied by a written stipulation of facts relevant to sentencing. Except to the extent that a party may be privileged not to disclose certain information, stipulations shall:

(1) set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics;

(2) not contain misleading facts; and

(3) set forth with meaningful specificity the...

(b) **To the extent that the parties disagree about any facts relevant to sentencing, the stipulation shall identify the facts that are in dispute.**

(c) A district court may, **by local rule**, identify categories of cases for which the parties are authorized to make the required stipulation orally, on the record, at the time the plea agreement is offered.

(d) The court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing. (emphasis added)

Though mainly addressing plea agreements, the local rule states; "At the time of a plea or..." indicating that the Rule has taken into account situations where there may be no plea agreement.

Either way one would view attorney's stipulation it is clear that it was not a knowing, intelligent, and voluntary admission or concession to 841(b)(1)(B), and Pelchat was denied any protections to insure that he understood the rights he was giving up, or the consequences of the stipulation. The conviction for 21 U.S.C. § 841(b)(1)(B) should therefore be reversed and Pelchat be remanded to be sentenced under the provisions of 21 U.S.C. § 841(b)(1)(D).

B. Rule 32

The District Court erred when it did not reslove several factual and legal disputes presented to the court. Also, Pelchat contends that on some of the disputes that were ruled upon, the ruling was in error.

The government asserted that;

> "Mr. Pelchat, in one of his submissions, argues, well, it really isn't 475 pounds of marijuana. And I've listed for the court in our various submissions that he has admitted to this amount **himself**, both in open court at the guilty plea -- and I've set forth the transcript pages, 51 through 55; **he admitted** it to the probation officer, that's found in paragraph 34 of the PSI; and he admitted **it himself** again in his objections to the PSI at paragraph 26 and paragraph 37. (emphasis added)

First, as Pelchat has already shown, **he** has listed pages 51-54 of the Plea Transcript to show that he did not (and could not) admit to any specific amount **himself**. Pages 54 and 55 is attorney stipulation, as previously argued, it is not Pelchat's admission.

Second, Pelchat never admitted any quantity to the probation officer in paragraph 34 of the PSI. It reads;

> 34. The defendant was **informed** the shipment was 500 pounds, however, he was expecting more. The defendant expected to pay $625 per pound and had intended to sell the marijuana for approximately $100 per pound more than he had paid, depending on its quality. **The defendant never saw the marijuana as he was arrested while unloading the truck.**

As stated in Pelchat's various submissions Pelchat "was informed" by a government agent that the shipment was 500 pounds and once again stated that he "never seen the marijuana." Pelchat is not stating this for legal convenience, he has consistantly maintained it because it's the truth. Officers at the scene could verify that Pelchat never seen the marijuana.

Third, Pelchat **himself**, did not admit to any quantity in his objections to PSI at paragraphs 26 and 37. Ground 5 of of the 2255 motion addresses this specifically. It was Pelchat

who specifically requested that his attorney motion to dismiss the PSI. Thereafter, Pelchat submitted his own motions disputing the findings of the PSI. Though they were not labeled "objections to the findings of the PSI," that is what they were. Also, many of the issues were "legal" issues that Pelchat believed were better suited as questions for the court.

Grounds 7,8,9, and 10 deal specifically with conflict between attorney and Pelchat, where attorney, in spite of being aware of Pelchat's position, went directly against Pelchat, and continued to make concessions and admissions contrary to his client's position and interests during the proceedings and at sentencing.

Several times, the government acknowledged that Pelchat had argued the actual weight of the marijuana, that, "it really isn't 475 pounds of marijuana." This is absolutely correct. Under 2D1.1 of the U.S.S.G. it states:

<u>Commentary</u>

<u>Application Notes:</u>

1. "Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

In Pelchat's motion to sentence him under the provisions of 21 U.S.C. § 841(b)(1)(D) he specifically questioned if the weight the government alleged was actual or if the weight included packaging material. (Whether it was gross weight or net weight). It should also be noted that under 21 U.S.C. § 802(16) the mature stalks of the plant are not illegal. This is relevant to net weight because large quantities of marijuana many times have some stalk weight that must be separated before sale, and marijuana is usually mature before harvesting for sale.

> Similarly, in the case of marijuana having a moisture content that renders the marijuana unsuitable for consumption without drying (this might occur, for example, with a bale of rain-soaked marijuana or freshly harvested marijuana that had not been dried), an approximation of the weight of the marijuana without such excess moisture content is to be used.

It was not determined whether the marijuana was freshly harvested or if it got wet. This is also highly relevant because moisture content greatly effects net weight. It is common to get marijuana that has not been "cured" because it can be compressed smaller than "dry" marijuana, and many times marijuana is packaged directly after harvesting. Also, it is common for marijuana to get wet (though usually not "rain soaked" but by method of transportation and/or how and where it is stored) and have to be dried out before it can be usuable.

The court, under Rule 32, was required to make a finding of fact; the finding must be explicit in order to allow for meaningful appellate review; and a written record of the finding was

required to be appended to the PSI. Pelchat has checked the BOP copy of the PSI and there is no findings appended, and the Judgment and Commitment order merely states that Pelchat "pleaded guilty to count 1 of the indictment", **"Title & Section** 21 U.S.C. §§ 841(a)(1) and 846","**Nature of Offense** Conspiracy to Distribute Marijuana".

Authority is also derived from the U.S.S.G. which requires resolving disputed factors.

**§641.3. Resolution of Disputed Factors (Policy Statement)**

(b) The Court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(c)(1), Fed. R. Crim.P.

Commentary

"... United States v. Roberts, 14 F.3d 502, 521 (10th Cir. 1993) (remanding because district court did not hold evidentiary hearing to address defendants' objections to drug quantity determination or make requisite findings of fact regarding quantity)"

Regardless of whether Rule 32 required the judge to make a finding, or determine that no finding was necessary because it won't be taken into account in sentencing, which quantity **was** taken into account, the U.S.S.G. commentary is binding on federal courts as ruled in the 8th Circuit decision of U.S. vs. Mooney, 2004 WL 1636960 (8th Cir. 2004);

"The guideline commentary is binding on federal courts, see Stinson vs. United States, 508 U.S. 36, 42 (1993), and the guidelines themselves indicate that the purpose of the accompanying commentary is to interpret the guideline and to explain how it is to be applied. See U.S.S.G. § 1B1.7. The Supreme Court pointed out in Stinson that the commentary accompanying the guidelines not only explains them, but it "provides concrete guidance as to how even unambiguous

guidelines are to be applied in practice." 508 U.S. at 44. Not only is the commentary "an authoritative guide to the meaning" of a guideline, id. at 42 (citing Williams vs. United States, 503 U.S. 193, 201 (1992)), but the "failure to follow interpretive and explanatory commentary could result in reversible error." Id. at 47. The commentary to § 2B1.4 is clear and consistent and must be given controlling weight. See United States vs. Hendricks, 171 F.3d 1184, 1186 (8th Cir. 1999). Stinson teaches that we are not free to ignore the definition in the commentary..."

Whether or not Mooney is overturned on rehearing, this finding is clearly the law of the 8th Circuit and the government should have fulfilled their burden when it knew that Pelchat was challenging actual quantity, and the court was required to resolve the dispute and/or follow the commentary on determining the actual quantity.

It must be noted that the determination of actual quantity is binding irrespective of any other finding of the court, including a finding that attorney stipulation is binding because, one, under U.S.S.G. § 6B1.4.(d) "The court is not bound by the stipulation" and two, the actual net weight is still an open question, therefore, it can be answered regardless of any stipulation.

This case should have an evidentiary hearing to determine actual quantity or Pelchat be resentenced under the provisions of 21 U.S.C. § 841(b)(1)(D).

The fact that the U.S.S.G. are binding are also relevant to the actual quantity of marijuana "seized" that this case is based on. In Pelchat's Position Pleading and another of his **pro se** submissions to the court Pelchat asserted that the government may

not use informant, or agent because he was on Federal Supervised Release. According to NCIC records Ralph Neal was on supervised release until at least June 20, 2001 for controlled substance offense. U.S.S.G. states;

> §5D1.3. **Conditions of Supervised Release**
>
> (a) Mandatory Conditions --
>
> (1) the defendant shall not commit another federal, state or local offense (see 18 U.S.C. § 3583(d));
>
> (2) the defendant shall not unlawfully possess a controlled substance (see 18 U.S.C. § 3583(d))...
>
> (c) (Policy Statement) The following "standard" conditions are recommended for supervised release. Several of the conditions are expansions of the conditions required by statute:
>
> (12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court...

Mr. Neal, as shown by his own statements, was committing controlled substance offenses while on supervised release in Minnesota, Texas, and every state between, in violation of § 5D1.3.

Mr. Neal did enter into an agreement to act as an informant or a special agent of a law enforcement agency. He acted as a special agent as his role was active participant rather than merely providing information. Pelchat asserted that this was done in violation of § 5D1.3(c)(12) in his POSTITION PLEADINGS, and again in his pro se DEFENDANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S POSITION PLEADINGS in which Pelchat

concluded with,

> "Defendant formally requests a inquiry into the actual status of Mr. Neal and a ruling on any effect that his actual status may have on this case."

The district court ruled;

> "Realistically, the information provided is adequate and supported by independent things in the record which make it clear that they are appropriate." S. Tr. p. 51 7-9.

Pelchat believes the ruling was error because the point was that the information be stricken from the record of this case, not whether it was "adequate" or "supported by independent things in the record." This information went to the very heart of this case and at the very least without it there would be **no** marijuana and Pelchat would have to be sentenced under 841 § (b)(1)(D).

This is not a mere policy statement as the government, the court, and Pelchats own attorney would have him believe, but has the **force of law.** Felons on supervised release cannot act as informants or special agents without **permission** of **the court** and that is what was never answered. If Mr. Neal did not have permission of the court, because quantity of marijuana is an essential fact or element, then the normal rules of evidence applies and the marijuana that Mr. Neal obtained is inadmissable.

Another dispute that was not resolved that goes to rules of evidence and admissability is the fact that Pelchat challenged the chain of custody for the alleged marijuana involved in the instant offense in his Motion to Sentence Defendant Under 21

U.S.C. § 841(b)(1)(D).

> "The alleged marijuana that this case is based on was obtained in Pharr Texas and in the Custody of evidence on page 103 of discovery it is represented as Exhibit 1. The last mention of Exhibit 1 is that it is pending controlled delivery to Minnesota.
> On page 106 of discovery an Exhibit 2 in a separate Custody of evidence was transferred to Minnesota. It appears that this may be a simple mistake but the defendant has no way of knowing for sure if there was in fact two separate Exhibits being stored and if the correct one was transported to Minnesota. If Exhibit 1 never came to Minnesota from a legal standpoint there is no way to be sure that it was in fact marijuana nor could the weight be verified."

Pelchat has a right to be sentenced, and be able to rest on that sentence, on reliable evidence. The government would not have been overly burdened to prove that the correct exhibit was the one delivered to Minnesota. Pelchat has no way of knowing if there were 2 (or more) exhibits being stored in Texas. All that the government needed to do is put an agent on the stand, (Minnesota agents transported alleged marijuana) or enter an affidavit on record. The government did not fulfill their burden, therefore, the evidence is not reliable and cannot be used to support sentence.

C. Change of Law

After Apprendi was decided there were several cases decided by the Eighth Circuit that are relative to the issues that Pelchat has presented throughout the course of this case.

In U.S. vs. Butler, 238 F. 3d 1001 (8th Cir. 2001) the defendant at trial stipulated that the substance was marijuana,

(Which is more than Pelchat did) but argued that the court must vacate his sentence because quantity was not charged and found by the jury. The total amount of marijuana in Butler was not weighed by a laboratory and the lab report's finding only indicated that, "based on a random sample of six bundles", the substance was marijuana. The total amount was never weighed. As such, the 8th Circuit Court of Appeals found that Butler's substantial rights were affected by the Apprendi error, and his case was remanded for resentencing. The quantity was never established in this case and the result should be the same.

In a case that is analagous to Pelchat's and is illustrative of what should have been done after Pelchat challenged the actual quanttity of marijuana, in U.S. vs. Paulack, 236 F. 3d 932 (8th cir. 2001) the defendant challenged the original quantity of marijuana as alleged by the government, thereafter, the marijuana was sent to a lab for reweighing without its packaging material. The lab's initial report was 240 pounds, and after reweighing without packaging material the weight dropped to 171.4, losing approximately 1/3 of the weight. See at 938. The result was a lower penalty provision but his sentence was affirmed. The illustrative point is that when actual quantity was challenged (gross vs. net) the government should have reweighed the marijuana in this case.

In U.S. vs. Hollingsworth, 257 F. 3d 871 (8th Cir. 2001),

as in Pelchat's case, the penalty provision was cited in the indictment. Even so,

> "contesting the method of calculation was sufficient to controvert the element of drug quantity for purposes of ... harmless error analysis." at 877.

The court further held that it was unlikely that the jury would have found quantities low enough to lower the penalty provision that Hollingsworth was sentenced under. The court then continued;

> However, unlikely does not equal irrational. To find harmless error in this case would move us a step closer to a result that the Court explicitly rejected in Neder -allowing a directed verdict against a defendant in a criminal case. See 527 U.S. at 17 n. 2, 119 S. Ct. 1827. at 877

The point relevant here is that even if the court may believe that it is "unlikely" that a reweighing (or other challenge) would make a difference to the penalty provision, it is not "irrational" that it may, in fact, do just that. Pelchat should be resentenced under 21 U.S.C. § 841(b)(1)(D).

D. Sentencing.

Given that the government presented **no** evidence, and the government had the burden of proof, the PSI cannot be used as evidence. The PSI contains nothing but naked or unsupported charges. Pelchat is not required to produce evidence showing how the facts are inaccurate. To the contrary, the government bears the responsibility of producing some evidence from which the district court may make a reliable estimate of the quantity

of marijuana that should be attributed to the defendant for purposes of determining his sentence before the defendant is required to come forward with evidence refuting the PSI.

It is clear error for the trial court to have found the establishment of facts necessary for the application of the § 841(b)(1)(B) enhancement. In effect, the trial court excused the government from its burden, taking that burden upon itself in the guise of judicial inquiry.

> "The presentence report is not evidence and not a legally sufficient basis for making findings on contested issues of fact." U.S. vs. Stapleton, 268 F. 3d 597, 598 (8th Cir. 2001) quoting U.S. vs. Greene, 41 F. 3d 383, 386 (8th Cir. 1994); U.S. vs. DeWitt, 366 F. 3d 677, 671 (8th Cir. 2004), remarking "The presentence report, **of course** is not evidence." "emphasis added."

Pelchat clearly, unambiguously, and emphatically objected to the presentence report enhancement recommendation and the facts alleged to support it. When objection is made, the sentencing court must make findings "on the basis of evidence, and not the presentence report." U.S. vs. Randolph, 101 F. 3d 607, 609 (8th Cir. 1996). The defendant's objections also put the government on notice "that it must meet an additional burden at the sentencing hearing." U.S. vs. Quintana, 340 F. 3d 700 (8th Cir. 2003). In Pelchat's case, this was a burden that was not met by the government, and all challenged and objected to "facts" must not be relied on in the determination of sentence.

Pelchat should not have been held responsible for the

entire amount of marijuana. In his various submissions and motions to the court Pelchat has stated that Ralph Neal and Manuel Olivarez, both of whom had agreed to testify against Pelchat, have delivered and sold marijuana in Minnesota before without any participation from Pelchat. Mr. Neal takes his transportation fee "off the top" in marijuana. Had it not been for government over involvement Pelchat surely would not have received full amount of shipment or may not have received any marijauna at all. Pelchat would not have had the requisite knowledge to reasonably forsee the entire scope of the jointly undertaken criminal activity. Under;

§1B1.3. <u>**Relevant Conduct (Factors that Determine the Guideline Range)**</u>

<u>Commentary</u>

<u>Application Notes:</u>

2. "...the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant."

Pelchat expected to be able to question Ralph Neal and Manuel Olivarez at the (evidentiary hearing Pelchat did not know had been withdrawn) sentencing hearing to establish these facts. At any rate, the district court must make particularized findings tying the defendant to the relevant conduct (the full amount of marijuana) used to enhance the statutory penalty.

Lastly, Quantity determination(s) (and other sentencing

factors) at the sentencing hearing were found under the preponderance of the evidence standard. This was Apprendi error as the standard of proof for the penalty provisions of 21 U.S.C. § 841(b) at the sentencing hearing were to be found beyond a reasonable doubt and the quantity had been challenged.

> "Insofar as the evidence concerning the quantities of drugs involved, the court finds that the defendant is properly held to the 2,800 kilos of marijuana which is called for in the indictment -- or in the pre-sentence investigation." S. Tr. P. 49, 5-9.
>
> "A government motion for an evidentiary hearing, which was withdrawn." S. Tr. P. 52, 20-21.
>
> "Frankly, I'm using that as another example. There's a great deal of marijuana listed there. If anybody wants to have a hearing on it, I can have that hearing. But, at a certain point, we've got to figure out what we're doing here. I mean, it's been now a year and a half since the plea." S. Tr. P. 59, 6-11.
>
> "Exactly. And rather than go through the required evidentiary hearing to meet the burden of proof of caling a number of witnesses and proving the relevant behavior (sic) on a preponderance..." S. Tr. P. 59, 21-24.
>
> "Exactly. And, so, I would ask the court merely to find the 475 and base its calculations based on where the guidelines go from there." S. Tr. p. 60, 8-10.
>
> "I'm comfortable with that. Your client has pleaded guilty, and on numerous occasions, even though on some occasions his counsel may have challenged it, has acknowledged himself the 475 -- which is actually the nexus of your argument. But he's a career offender, which puts him at a category 37 no matter what the numbers are. S. Tr. P. 61, 1-7.
>
> "I tell you, Joseph Charles Pelchat, that you were charged in Count I of an indictment, with conspiracy to distribute and possess with intent to distribute a quantity in excess of 100 kilograms of marijuana, in violation of 21 United States Code, Section 841(a)(1) and 846. Based upon your plea of guilty, it is considered and adjudged that you are guilty of that offense. I do not need to make a determination as to whether the quantity is larger than a hundred -- more than -- you know, a small amount more than a hundred kilograms. You know and I know it was a great deal. We can go play games with adding and subtracting, but you're in the category -- you're a career

> offender and that puts you in the sentencing guideline category which I've already describe. I'm not going to ask you to admit what you don't want to admit to, but you know what the truth is, and so do I. And I suppose they're lacking tete-a-tete, but that doesn't really matter right now. S. Tr. Pgs. 69-70 (24-25)(1-16).

The government believed that their burden was by a **prepnderance.** P. 59 and thereafter asked "the court **merely to find** the 475" p. 60.

It is evident from the Sentencing Transcript that the court was finding quantities by a preponderance where the court finds 2800 kilos of marijuana, p. 49; and where the court believes that quantity can be resolved by having a hearing, p. 59; where the court is "comfortable" with that, (referring to finding quantity) p. 61 and where the court does not need to make a determination whether the quantity is a small amount more than a 100 kilograms. Then acknowledges that Pelchat did not admit to quantities, and that our understanding was "lacking tete-a-tete, but it doesn't really matter right now." p. 70.

The court went from finding 2800 kilograms, to finding 475 pounds, to finding all it needs to do is find a small amount more than 100 kilograms.

The sentencing hearing speaks for itself, quantity of marijuana that had unresolved challenges was not found beyond a reasonable doubt. The government did not fulfill their burden and is not entitled to have Pelchat sentenced under the enhanced penalties of 21 U.S.C. § 841(b)(1)(B) and Pelchat must be resentenced under the provisions of 21 U.S.C. § 841(b)(1)(D).

THE SIXTH AMENDMENT REQUIRES THE GOVERNMENT TO PROVE BEYOND A REASONABLE DOUBT THE FACTS THAT MAKE UNENUMERATED PRIOR CONVICTION(S) DRUG FELONIES AND THE FACTS THAT PRIOR(S) ARE FINAL UNDER 21 U.S.C. § 851 AND THE ADDITIONAL FACTS REQUIRED UNDER 4B1.1 OF THE U.S.S.G.

A. Facts beyond the mere prior conviction of an aggravated felony must be found by a jury beyond a reasonable doubt.

In 1998, the United States Supreme Court decided Almendarez-Torres, 118 S. Ct. 1219 (1998), in which the court held that the government need not incorporate within the indictment itself the fact of a prior conviction for enhancement purposes, because it is not an element of the offense charged. That case involved the enhancement under 8 U.S.C. § 1326(b)(2), which provides for a sentencing enhancement for any alien who illegally returns to the United States after having been deported subsequent to a conviction for an aggravated felony.

In 2000, the Supreme Court decided Apprendi vs. New Jersey, 120 S. Ct. 2348 (2000), which specifically limited the application of Almendarez-Torres to the specific question conderning the sufficiency of the indictment:

> Rejecting Almendarez-Torres' objection, we concluded that sentencing him to a term higher than that attached to the offense alleged in the indictment did not violate the strictures of Winship in that case. Because Almendarez-Torres had **admitted** the three earlier convictions for aggravated felonies - all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own - no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court. Although our conclusion in that case was based in part of our application of the criteria we had invoked in McMillan, the specific question decided concerned the sufficiency of the indictment.

Apprendi, at 2361-62. The determined that:

> Both the certainty that procedural safeguards attached to any "fact" of prior conviction, and the reality that

end Almendarez-Torres did not challenge the accuracy of that "fact" in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact," increasing punishment beyond the maximum of the statutory range. id. at 2362

There is authority limiting the Almendarez-Torres, exception to the mere fact of a prior conviction ("for purposes of our decision today that Almendarez-Torres as a narrow exception to the general rule on the sufficiency of the indictment" Id,) and authority from the same court questioning the validity of its own decision. ("Even though it is aruable that Almendarez-Torres was incorrectly decided," Id). What is clear from the discussion in Apprendi, is that the holding is Almendarez-Torres does not apply if a defendant contests the recidivist issue ("a logical application of our reasoning today [in Apprendi] should apply if the recidivist issue were contested." Id.) Which Pelchat has done from the district court on.

Thus, when a statute raises the statutory maximum on the basis of a fact relating to a prior conviction itself, that fact should be subject to the Apprendi rule. Indeed, the Supreme Court has expressly characterized this quesion as an open one. See, Dretke vs. Haley, 124 S. Ct. 1847, 1853 (2004) (noting that the defendant presented a "difficult constitutional question" when he argued that "Almendarez-Torres did not apply because the recidivist statute at issue required the jury to find not only the existence of his prior convictions but also the additional fact that they were sequential.").

This open question, that there is more than just the mere fact of a prior conviction that effects the statutory maximum, including the sequential and/or controlled substance nature of those priors (under 21 U.S.C. § 851), plus the defendant was at least 18 when he committed instant offense, that the instant and 2 priors are same or similar crimes of crime of violence or controlled substance, and that the 2 priors occurred within 15 years of the commencement of the instant offense, (under Career Offender) obviously has not been answered and thus is not precluded by the decision in Almendarez-Torres.

B. Fact of prior conviction itself must be found by a jury beyond a reasonable doubt.

There is authority that the lower courts can resolve the Sixth Amendment issues surrounding the fact of prior conviction(s) that were not resolved in Almendarez-Torres.

Along with the argument presented in the previous section, Apprendi also stated;

> "Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset" at 490.

It was clear that Almendarez only decided the sufficiency of the indictment and that Almendarez-Torres mitigated his Sixth Amendment concerns when he admitted prior convictions.

In U.S. vs. Booker, 375 F. 3d 508, (6th Cir. 2004) (which the 8th Circuit joined in Mooney) the court found the U.S.S.G. unconstitutional based upon the decision in Blakely

vs. Washington even though the Supreme Court specifically declined to rule on the U.S.S.G.. The 6th Circuit stated:

> "We are midnfull of the Supreme Court's ukase that the lower federal courts are not to overrule a Supreme Court decision." at 513.

The court then went on to reason that the U.S.S.G. had survived many constitutional challenges but never a direct Sixth Amendment challenge. See 513.

Because the Supreme Court declined to address any effect Blakely may have on the U.S.S.G. the 6th Circuit stated;

> "When the Supreme Court says that it is not resolving an issue, it perforce confides the issue to the lower federal courts for the first pass at resolution." at 513.

Under this reasoning, that the 8th Circuit joined, the lower courts have the authority, and the **duty** to resolve the 6th Amendment issues of recidivism that were left unanswered in Almendarez-Torres and Apprendi.

> "A logical application of our resoning today [in Apprendi] should apply if the recidivist issue were contested" Id.

Indeed!

Pelchat in support of his position adopts;

BRIEF OF THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS AS **AMICUS CURIAE** IN SUPPORT OF PETITIONER

for the Writ of Certiorari of Reginald Shepard vs. United States, that specifically calls for overturning Almendarez-Torres.

**21 U.S.C. § 851 may not be used to enhance Pelchat's sentence.**

21 U.S.C. § 851(a)(1) mandates that "before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person)." Pelchat was arrested for the instant offense on January 3, 2000 and was held in custody. The indictment was filed on February 1, 2000. The United States attorney filed the information pursuant to 21 U.S.C. § 851 on April 17, 2000 after being informed of Pelchat's contemplated change of plea at the next day's recusal hearing on April 18, 2000.

Pelchat learned of the information being filed for the first time during the plea colloquy. "The Court: Now, then, do you understand that the United States yesterday -- did you receive a copy or had you heard about this enhancement being filed? The defendant: I just heard today, your Honor." (Plea Transcript p. 43).

Pelchat does not contest that the government filed the information, but does contest that the government complied with the formal requirements of service. Mr. Meshbesher's office assiduously date stamps all legal correspondence received and he has no copy of the information with a date stamp nor does his office have **certificate of service for the information.** Because the government did not formally comply with the formal service requirement before entry of a plea of guilty, the court did not have the authority to sentence Pelchat under the enhanced

provisions of 21 U.S.C. § 841(b).

Pelchat claims ineffective assistance of counsel as stated specifically in Ground 3 in the body of the § 2255 motion and generally in grounds 1, 2, and 11, and that Pelchat was prejudiced by counsels deficient performance.

Pelchat is aware of the 8th Circuits decision in U.S. vs. Mooring, 287 F. 3d 725 (8th Cir. 2002) where it was held that service of § 851 is not a jurisdictional issue. Pelchat disagrees, see Sentencing Jurisdiction as argued earlier. In addition the example used in Mooring is, of course true.

> "For example, a defendant may waive indictment despite the Fifth Amendment's unqualified language that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Id. "Because § 851(a)(1)'s temporal requirements exist for the defendant's benefit, it makes perfect sense to give the defendant the power to waive (and the obligation not to forgeit) strict compliance with them."

A defendant under Rule 7 may waive his right to indictment, but **he cannot waive his right to be charged.**

Nevertheless, the facts of Pelchat's case are sufficiently different from Mooring that the 851 in Pelchat's case should be dismissed. Pelchat did not admit, stipulate, or plea guilty to information, unlike Mooring who stipulated in his plea agreement to the prior conviction. Pelchat, and the court, did not see a copy before or during change of plea, and only found out during plea colloquy that government filed information.

In every case where defendant, in a similar case to Pelchat's, has contested service and lost it was because the government had

not only complied with Federal Rules of Civil Procedure 5(b), but also 5(d) which requires a certificate of service to prove service.

> See; U.S. vs. Kennedy, 133 F. 3d 53, 59 (D.C. Cir. 1998) (satisfied statutory obligation **as evidenced by certificate of service**); U.S. vs. Severino, 316 F. 3d 939 (9th Cir. 2003) ("The person who **signed the certificate of service** stated **under oath** that he mailed a copy of the information prior to filing."); U.S. vs. Rosenboro, 71 Fed. Appx. 493 (6th Cir. July 30, 2003) ("the AUSA submitted the same § 851 Information to the District Court - properly signed- along with **a certificate averring** that the government had served the Information on Rosenboro's counsel.)

5(d) is no less a requirement of service that 5(b) and in this case the government did not comply with that requirement. A cover letter is **not evidence** of service and in Ground 4, with attached exhibits Pelchat has submitted evidence that refutes service was timely and properly served. The information should be dismissed and Pelchat be resentenced under the unenhanced provisions of 21 U.S.C. § 841(b).

B. 21 U.S.C. § 851 must be charged by Indictment.

Because Congress mandated that the government "file an Information" under § 851 the statute is unconstiutional, or at least that portion, unless a defendant waives prosecution by Indictment. The reason for this is simple, § 851 is a charge, and in the Federal System a defendant has a Fifth Amendment right to be charged by Indictment.

This is an issue that Pelchat cannot understand why the court will not address at least the definition of "Information".

Pelchat has only found **one** legal definition for an Information.

**"Information".** A formal criminal charge made by a prosecutor without a grand-jury indictment.

Further, the "information" specified pursuant to 21 U.S.C. § 851(a)(1) was clearly defined as a charge in United States vs. Olson, 716 F. 2d 850, 851 (1983);

> "The 'information' referred to here is, of course, an information in the legal sense: a complaint or accusation presented against a person and charging a criminal offense, filed at the descretion of a proper law officer of the government but without the intervention of a grand jury. In short, it is a formal charge of a criminal offense. It differs from an indictment in that it is presentend by a competent public officer and supported by his oath of office, rather than presented by a grand jury on it's oath."

When the meaning is clear, the Supreme Court has found;

> Lorillard vs. Pons, 55 L. Ed. 2d 40 (1978) ("' Where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.'") (quoting Standard Oil Co. vs. U.S., 55 L. Ed. 619 (1911)); see also Neder vs. U.S. 144 L. ed. 2d 35 (1999) (noting that were Congress uses terms with settled meanings, "a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms" (internal quotation marks omitted)).

What else can a information be? Pelchat formally requests a ruling on this issue under due process.

This specific case also had 21 U.S.C. § 841(b)(1)(B) charged by information which also mandates dismissal of the information because Pelchat never waived his right to Indictment.

C. 21 U.S.C. § 851 must be filed (and served) in accordance with 18 U.S.C. § 3161.

§ 3161 states;

> "Any information or indictment charging an individual with the commission of an offense sahll be filed within thirty days from the date on which the individual was arrested or served with a summons in connection with such charges..."

The information in this case specically states' "THE UNITED STATES ATTORNEY CHARGES THAT:" the "charge" also included § 841(b)(1)(B). The information has been clearly defined as a charge, and here the government clearly states it's a charge.

21 U.S.C. § 851 became law in 1970. The Federal Speedy Trial Act of 1974, implemented pursuant to 18 U.S.C. §§ 3161-3174, put to rest any ambiguous and arbitrary standards by implementing specific time limits, requiring specific reasons must be present to justify any delay, and setting forth procedural rules to obey regarding notice of any delay.

Because §§ 3161-3174 included "Any Information" and 21 U.S.C. § 851 is not exempted within any of the Speedy Trial provisions, the Speedy Trial Act abrogated the time limits set forth under 21 U.S.C. § 851 and the information must be dismissed under § 3162.

D. 21 U.S.C. § 851 is facially unconstitutional.

Additionally, § 851(c)(1) requires that a hearing be held on disputed prior convictions before the court, without a jury, and that the government must prove beyond a reasonable doubt any disputed issues of fact. To explicitly require this finding of fact "without a jury" offends the constitutional rule made by the U.S. Supreme Court in Apprendi vs. New Jersey, 120 S. Ct.

2348, 147 L. Ed. 2d 435 (2000), that it is for the jury to determine, beyond a reasonable doubt, facts that may increase a sentence beyond the statutory maximum. Along with B and C of this section 21 U.S.C. § 851 is Facially unconstitutional in violation of the 5th and 6th Amendments, and the information should be dismissed.

E. The prior convictions charged under 21 U.S.C. § 851 cannot be relied on to enhance sentence.

U.S. vs. McChristian, 47 F. 3d 1499 (9th Cir. 1995) embodies some of the principles that Pelchat has been unable to adaquately express.

The government has taken the position that Pelchat is barred from collaterally attacking prior convicitons by § 851(e). The court in McChristian held;

> "Ingram's successful collateral attack on his 1982 conviction was on appeal at the time Ingram was sentenced. Along with § 851(e), the district court cited this fact in relying on the 1982 conviction. We conclude that this reliance was also error. Williams vs. United States, 651 F. 2d 648 (9th Cir. 1981), which held that a prior conviction is not "final" for enhancement purposes while certiorari before the Supreme Court is pending, indicates that no reliance should be placed on a conviction while direct appeal is pending." at 1503.

The relevance here is that Pelchat challenged his 1990 conviction **in a different Federal Court** as opposed to a state court, but Pelchat cannot see what difference in would make. The challenge was not to be in the court of the instant offense. It is the court itself that consolidated the cases, **not Pelchat.** Pelchat was not using § 851 to challenge prior conviction.

The instant challenge to Appellant Pelchat's 1990 conviction, brought pursuant to F.R. Crim. P. 12(b)(2) was to dismiss the indictment. A Rule 12 motion to dismiss an indictment on jurisdictional grounds must be noticed by the court at any time during the pendency of the proceedings, including post-conviction supervised release revocation proceedings. Because the government reopened Pelchat's 1990 case for supervised release revocation purposes, Pelchat's 1990 conviction, previously unassailable by the rule of finality, is now ripe for direct review under prevailing standards regarding the U.S. District Court's jurisdiction in this matter.

There was never any ruling on Pelchat's motion to dismiss the indictment on the 1990 case. The question that has never been answered is:

> "When the government initiates proceedings to impose a sentence for a violation of supervised release, does such action bring the case back into the "pendancy of the proceedings" within the meaning of Rule 12(b)(2)?"

If so then the 1990 conviction was not a final and reliable conviction for the purposes of enhancement under 21 U.S.C. § 851, and the Career Offender provisions of the U.S.S.G. that the courts will not address any of these issues or answer any of the questions and concerns violates due process rights of Pelchat.

The second challenge was a constitutional challenge under double jeopardy grounds. There was no "challenge" to the validity of the conviction so 851(e) cannot preclude a ruling on a constitutional issue.

The challenge brought forth was that the 1986 prior conviction is a valid final conviction, but it had been charged pursuant to 21 U.S.C. § 851 previously in the May 14, 1990 matter and Petitioner was sentenced to an enhanced statutory maximum sentence equating to an adjudication of guilt. The same federal offense of 1986, in the instant offense has been charged by the same federal statute, 21 U.S.C. § 851, and the same penalty provision, 21 U.S.C. § 841(b), that was previously enhanced in 1990 has been enhanced again by the 1986 conviction, equating again to an adjudication of guilt. 21 U.S.C. § 851 is statutory law and to be charged twice (and adjudicated as guilty) with the same offense under the same statute is a violation of the double jeorpardy clause of the Fifth Amendment.

The 1986 conviction cannot be charged in the information under double jeopardy grounds and cannot be used for enhancement purposes.

It has also been used twice in the Career Offender provisions, therefore Pelchat, without the 1986 conviction cannot be sentenced as a career offender.

Under Blakely Pelchat asserts that he has not admitted to quantity and therefore must be sentenced under the offense simpliciter for marijuana which is 21 U.S.C. § 841(b)(1)(D). Further the quantity has never been proven beyond a reasonable doubt.

Pelchat was not charged with, admitted to, or found beyond

a reasonable doubt to be a career offender.

Pelchat was not charged by indictment, admitted to, or found guiilty beyond a reasonable doubt, of violating 21 U.S.C. § 851.

In the alternative, if the court was to find that Pelchat was guilty of 841(b)(1)(B) quantities the statutory maximum for purposes of Blakely is 150 months. Any enhancements that the Court finds relative to prior convictions must apply to the 150 month maximum.

## CONCLUSION

Pelchat should be resentenced under the provisions of 21 U.S.C. § 841(b)(1)(D) with no enhancements applied, or any other relief that the Court deems fair and just.

Respectfully Submitted,

Joe Pelchat
Joseph C. Pelchat Pro Se
02553-041
Federal Medical Center
PMB 4000
Rochester, MN 55903-4000

All Correspondence to Joseph C. Pelchat should be addressed using the above address followed by: LEGAL MAIL: Open Only In The Presence Of The Inmate. Respectfully Requested:

Joe Pelchat
Joseph Pelchat