UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 00-25 (JMR/FLN)
Civil No. 03-6532 (JMR)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>JOSEPH C. PELCHAT,<br><br>Defendant-Petitioner. | ) | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION PURSUANT TO 28 U.S.C. § 2255** |

The United States of America, appearing through its attorneys, Thomas B. Heffelfinger, United States Attorney, and James E. Lackner, Assistant United States Attorney, submits the following response in opposition to Defendant Joseph C. Pelchat's § 2255 habeas motion.

**INTRODUCTION**

Pelchat was on supervised release from a federal drug conviction when he committed the instant offense, conspiracy to distribute in excess of 100 kilograms of marijuana. He was arrested while he was unloading boxes of marijuana from a truck into his Suburban. The evidence against him was overwhelming and he decided to plead guilty. His appeal having been resolved against him, Pelchat now moves this Court to vacate his sentence based on numerous claims of ineffective assistance of counsel during his guilty plea hearing and at sentencing.

Pelchat's motion should be denied. Pelchat is unable to show that he was prejudiced by counsel's performance or that the outcome

of his case would have resulted in a lesser sentence.

**STATEMENT OF THE CASE AND FACTS**

Prior to his involvement in this case, defendant Pelchat had been convicted of four felony drug offenses -- two in U.S. District Court for the District of Minnesota. The charged offense in this case, which is but one episode of a multi-year marijuana conspiracy involving the same co-conspirators, resulted from a long term investigation and undercover operation. On January 3, 2000, the defendant was arrested while he was unloading a semi trailer truck containing 470 pounds of marijuana in cardboard boxes into his Suburban. He was assisted in unloading the trailer by the semi-truck driver, an undercover police officer. (PSI, ¶ 19-22). Inside the Suburban were one of Pelchat's co-defendants, Michael Molzen, and a juvenile. As Pelchat completed transferring the marijuana, the undercover officer gave an arrest signal. When the arrest team approached Pelchat, he closed the back door to the Suburban and attempted to run away. He was arrested before he got very far.[1] (PSI, ¶ 22).

On February 1, 2000, the grand jury returned a single count Indictment charging Pelchat and three co-defendants with conspiracy

[1] Meanwhile, co-defendant Molzen, driving the Suburban now filled with the marijuana, and the juvenile, attempted to escape. A high speed chase ensued, and the Suburban was stopped six miles later, only after the vehicle's tires were punctured by a "speed stick". (PSI, ¶ 22). Inside the Suburban were the thirteen cardboard boxes containing marijuana which defendant Pelchat had transferred from the semi trailer truck. (PSI, ¶ 22).

to distribute and possess with the intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. § 846, and §§ 841(a)(1) and (b)(1)(B).

Prior to pleading guilty, Pelchat explored with the government the possibility of entering into a "substantial assistance" agreement. To determine whether such an agreement was possible, the government informed defense counsel that Pelchat would have to make a proffer and the proffer itself would not constitute substantial assistance. (See March 13, 2000 letter, attached to docket no. 143, "Government's Memorandum in Opposition to Evidentiary Hearing", as attachment 1). Pelchat decided to proffer.

After the proffer, it was determined by the officers involved that Pelchat offered them no information which was either significant enough to warrant a new investigation or further an ongoing one. (See Affidavit of Craig Martin, ¶ 2c; Affidavit of Henry Brummer, ¶ 4a, b, c; Affidavit of Paul Wysopal, ¶ 3; docket no. 154; Addendum, p. 10-20). Pelchat was not interested in the limited agreement the government offered him based upon its analysis of his proffer. (Lackner Affidavit, ¶¶ 8,9 Appendix, p. 5). No plea agreement was reached. No subsequent meeting occurred between the defendant and government agents to either further an investigation or prosecution.

On April 17, 2000, the government filed and served an

Information pursuant to 21 U.S.C. § 851, due to the defendant's prior drug convictions. (Docket no. 99; GPT 43-45). The effect of filing the Information was to increase Pelchat's mandatory minimum to ten years.

On April 18, 2000, Pelchat pled guilty straight up without the benefit of any plea agreement to the indictment. The plea colloquy shows that the defendant was advised by both the Assistant U.S. Attorney and the District Court numerous times that there was no substantial assistance agreement and that he should not enter his "straight up" guilty plea under the mistaken belief that such an agreement would be reached in the future. (GPT 7, 13, 15, 22, 24, 26-27, 45, 56-57).

At the change of plea hearing, defendant's counsel, Steven Meshbesher (attorney John Hughes, who was appointed by Jduge Rosenbaum to represent the defendant for the sole purpose of the proffer, was also present for the change of plea), acknowledged that his client was not pleading with the expectation that he had a substantial assistance agreement:

> That proffer has been made. Mr. Pelchat has decided at this point he does not want to continue on that line of discussion and he wants to take a plea of guilty, straight up, to the current Information or Indictment that exists on the case at hand.

(GPT 4).

The record clearly evidences that defendant Pelchat understood he was not receiving a substantial assistance agreement by pleading

straight up and should have no future expectation of one. (GPT 7, 13, 15, 22, 56-57).

At the plea hearing, the defendant acknowledged that the § 851 had been filed and that his mandatory minimum would therefore be ten years:

> MR. LACKNER: You Honor, before you get into the maximum, you should know that we filed an Information yesterday.
>
> THE COURT: And the Information accelerated - or you filed an enhancement.
>
> MR. LACKNER: Right.
>
> THE COURT: And it's a minimum of five?
>
> MR. LACKNER: No; it's a minimum of ten.
>
> THE COURT: All right.
>
> MR. LACKNER: Ten years to life.
>
> THE COURT: Now, then, do you understand that the United States yesterday - did you receive a copy or had you heard about this enhancement being filed?
>
> THE DEFENDANT: I just heard today, your Honor.
>
> THE COURT: You heard about it before we started today, or just this minute? Why don't you step aside and talk with Mr. Meshbesher for a minute.
>
> (At this time a discussion was had off the record between Mr. Meshbesher and the defendant).
>
> THE DEFENDANT: I'm clear on what it is, your Honor.
>
> THE COURT: I'm Sorry?
>
> THE DEFENDANT: I'm clear on the Information.
>
> MR. LACKNER: Your Honor, for the record, we filed it with the court yesterday, and served both Mr. Hughes and Mr. Meshbesher by fax yesterday and mailed it yesterday, and

they received the mail copy this morning.

THE COURT: I don't know they dispute that they received it.

MR. LACKNER: I just wanted to make a record on that.

THE COURT: Sir, let me explain what I know you are aware of. The government has a number of options in some of these charges, and in this case they pulled the trigger and dropped in a token that makes the minimum ten years up to a maximum before you rather than a minimum of five years.

MR. LACKNER: A maximum of life, you Honor.

THE COURT: Okay. So now you're facing ten to life. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Now, you've talked about that with Mr. Meshbesher?

THE DEFENDANT: Yes.

THE COURT: All right. With that in mind, I tell you that – you understand that on the basis of a plea, I can't go below ten years unless the government makes a motion, and I would guess right now that it does not appear that that's very likely.

THE DEFENDANT: That's correct.

(GPT 43-45).

At the guilty plea, Pelchat admitted that he had contacted another co-defendant, who is now a fugitive, Edward Brown - Pelchat's Texas source - to obtain the marijuana. (Guilty Plea Transcript "GPT", 49-51). Pelchat admitted he had done previous marijuana deals with Brown. (GPT 50-51). Pelchat contacted Brown by phone, and set up a delivery of what he expected to be between

a 500-1000 pound shipment of marijuana. (GPT 50-52). Pelchat admitted during his guilty plea that the two had done deals of this size before. (GPT 52).

Pelchat admitted to and also stipulated that the amount of marijuana involved in the charged conspiracy was approximately 500 pounds. (GPT 50-51; 54-55; see also Pelchat letter to Probation Officer, dated September 5, 2000, p. 3, ¶¶ 26, 37, attached to docket no. 127, "Defendant's Position Pleadings" as Ex. 1).

Sometime after he entered his guilty plea, the defendant alleges that he made contact with a drug source, a supposed "Mr. Love", in an attempt to provide substantial assistance. John Hughes called the undersigned Assistant U.S. Attorney to tell him that, and the undersigned told defense counsel that the government did not intend to enter an agreement with Pelchat and so he should not undertake any attempts at cooperation in the hopes of achieving a downward departure motion. (See Affidavit of James Lackner, ¶ 11).

As noted in the affidavits submitted by the government to the District Court, no investigative use was made out of the "Mr. Love" letter. It had not been received by the government until it was attached to the defendant's motion for downward departure. It's authenticity and meaning has never been established.

After the proffer, there was no contact between the government agents and Pelchat. No agent or agency made a new case, seizure or

even furthered an investigation based upon Pelchat's proffer. One agent attempted to make some investigative use of the proffer but failed. (See Affidavit of James Lackner, ¶¶ 13, 14; Affidavit of Paul Wysopal, ¶ 4; Appendix, p. 3-7, 10, ST 30-33).

Prior to sentencing, the defendant moved for an evidentiary hearing to establish that the government acted in an unconstitutional manner in refusing him a substantial assistance motion. On April 23, 2001, this request was denied by the district court because the defendant failed to make a "substantial threshold showing". (See docket no. 152).

At sentencing, the defendant moved for a downward departure for his alleged substantial assistance under § 5K1.1 and § 5K2.0. As to § 5K2.0, he argued he was entitled to a departure because he had placed himself in danger as a result of his supposed cooperation.

The Court offered the defendant the opportunity to present evidence. Defense counsel, Steven Meshbesher, basically stated he had little or no evidence concerning the motions for departure:

> We came before the court at one time regarding an evidentiary hearing. The court made a judicious request of defense counsel to make a presentation of why we'd be entitled to present evidence. I have not provided the court with anything more than an affidavit of my client - or a statement of my client . . .

(ST 9). The defendant had submitted several "statements" of others prior to the court's August 23, 2001 decision on the evidentiary hearing. None of these statements set forth any evidence that the

defendant's proffer led to additional prosecutions, seizures or investigations. Defense counsel at sentencing stated that he had no evidence of any indictments or convictions resulting from the proffers. (ST 22-23).

As to the defendant's § 5K1.1 motion, the defendant admitted he had no evidence that the government refused to make a motion for downward departure under § 5K1.1 based upon race, religion or protected class. (ST 21). The court found no evidence to this effect. (ST 39). The defendant agreed there was no reason to have an evidentiary hearing. (ST 25). The Court also found that the defendant was told many times that he was not going to get a downward departure for substantial assistance. (ST 37-42).

The Court held that the defendant's proffer did not amount to substantial assistance:

> But does the defendant's activities rise to a level of substantial assistance? In this area there is no question in the Court's mind that it does not. No case has arisen as a result of it, no indictment has issued as a result of the defendant's work, no convictions have been obtained nor, to my knowledge, have any drugs been seized, or anyone brought to justice as a result of any of the work. The defendant engaged in voluntary discussions. He knew there was no promise made and none was delivered. On that basis, I cannot find the government's unwillingness to issue a - or make a motion for downward departure to be irrational.

(ST 42). As to the defendant's motion under § 5K2.0, based upon supposed risks due to cooperation, the court refused to depart both because it found that there was no evidentiary basis to do so, and because as a practical matter it would be fruitless. The court

found it could not go below the ten year mandatory minimum even if it granted the § 5K2.0 motion - which the defendant agreed with. (ST 44). The Court noted that:

> I'm trying to be realistic to the extent, if you are correct, that there is a degree of harm, presumably it would occur in the first ten years, which there is no way that the Court can below. After ten years, presumably his danger will attenuate.

(ST 44).

More importantly, the Court found that the defendant had failed to produce evidence of danger. None of the documents evidenced any threats or risks to the defendant from his supposed cooperation. The Court noted as much:

> No member of his family has been hurt, or threatened or injured and he is not, to my knowledge . . . I don't see the danger . . . I don't have the record here . . . I'm looking for something more substantive than your fear about it.
>
> I do not see that there's any evidence of substantial danger which would call upon this Court to give any sentencing consideration as a result of it.

(ST 47). Therefore, the court found there was no evidentiary basis for the § 5K2.0 motion.

The district court did not address the government's argument that the court did not have the authority under § 5K2.0 to grant a motion for factors set forth in § 5K1.1.

The court also rejected the defendant's other departure arguments, including one based upon "disparity in treatment" between the defendants and an argument concerning the validity of

a 1990 conviction. (ST 39).

Pelchat was sentenced to a 262 month prison term. (ST 70). Pelchat appealed his sentence arguing the he was entitled to a downward departure from the Sentencing Guidelines based on substantial assistance under § 5K1.1 and § 5K2.0 for increased personal risk stemming from his assistance to the government, "disparity in treatment" between the defendants, and the validity of a 1990 conviction based on Apprendi. See United States v. Pelchat, 40 Fed. Appx. 306 (8th Cir. 2002). The Eighth Circuit rejected each claim and affirmed the judgment of the district court. Id. at 307-08.

Pelchat filed a petition for writ of certiorari with the United States Supreme Court and was denied. Pelchat v. U.S., 537 U.S. 1094 (U.S. Dec. 16, 2002). Pelchat filed a petition for rehearing, which was also denied. See Pelchat v. U.S., 537 U.S. 1228 (U.S. Feb. 24, 2003).

On Decemeber 18, 2003, Pelchat timely filed his pro se § 2255 habeas motion seeking to vacate, set aside or correct his sentence. Throughout 2004, Pelchat moved the court and was granted additional time to file his memorandum of law in support of his habeas motion.

On December 2, 2004, the government received a copy of Pelchat's § 2255 memorandum. Although quite lengthy and somewhat repetitious, Pelchat's memorandum essentially makes four arguments under the heading of ineffective assistance of counsel:

1) That his guilty plea was entered unknowingly, counsel never discussed the stipulation with him concerning drug quantity and fully expected an evidentiary hearing on the matter;

2) The government failed to satisfy the requirements of the information filed under 21 U.S.C. § 851, claiming that he was never formally served with the 851 information (even thought Pelchat acknowledges that the government filed the information), that a § 851 enhancement must be charged in the Indictment, and that the § 851 enhancement is unconstitutional;

3) Counsel failed to object to inaccuracies of the PSI, failed to attack the credibility of CRI and the chain of evidence; and

4) That his conviction and sentence were in violation of Blakely and Apprendi.

**ARGUMENT**

Title 28, U.S.C. § 2255 requires a prisoner to show that he has the right to be released because:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. "Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." Blom v. United States, 2003 WL 21639165, *2 (D. Minn. Jul. 2, 2003) (unreported) citing United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

## I. PELCHAT'S § 2255 MOTION SHOULD BE DENIED BECAUSE COUNSEL'S REPRESENTATION DID NOT FALL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS

In order to establish ineffective assistance of counsel, Pelchat needs to show: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). This Court need not address both components if the movant makes an insufficient showing on one of the prongs. Id. at 694.

In evaluating counsel's performance, the Court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional" competence. Id. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). In considering claims of ineffective assistance of counsel, courts must presume that an attorney provided effective representation and "not second-guess strategic decisions or exploit the benefits of hindsight." Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997). To show that counsel's performance was deficient, the defendant must show counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

To prove prejudice, a defendant must show that there is a reasonable probability that the results of the proceedings would have been different but for his counsel's errors. See id. at 694;

see also El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993). Stated differently, a defendant must show that the proceedings were rendered fundamentally unfair or unreliable by counsel's deficient performance. See El-Tabech, 997 F.2d at 389.

### A. Pelchat Entered a Knowing and Voluntary Guilty Plea Straight-up

Pelchat claims that his guilty plea was entered unknowingly because he did not understand the charge, nor was he aware of the drug quantity involved. He argues that his attorney was ineffective for stipulating to drug quantity, because his attorney never discussed the stipulation with him. See Pelchat's § 2255 Memorandum at pp. 19-21; 36, 38-43.

Contrary to his assertions, the record shows that Pelchat was ready to enter a plea on April 18, 2000:

> THE COURT: . . . You don't have to plead today. If you want to wait another today [sic], you want some more time to talk with your lawyer, you're entitled to it. Do you understand that?
>
> THE DEFENDANT: Yes, I do, your Honor.
>
> THE COURT: Do you want to proceed?
>
> THE DEFENDANT: Yes, I do your Honor.
>
> THE COURT: All right.
>
> THE DEFENDANT: My intention from the very beginning of this case was to plead guilty.

(GPT 32).

Because there was no plea agreement in the case, the Court proceeded cautiously to ensure that the defendant was competent to

enter a plea, and that he understood the rights he would be waiving, e.g., requiring the government to prove the charges before a jury of his piers, a speedy trial, subpoena and cross-examine witnesses, the opportunity to testify on his own behalf at trial if he chooses so. (GPT 36-42). Pelchat affirmatively responded to the Court that he was willing to waive his rights. Id.

At the plea hearing, the government specifically asked defense counsel to stipulate as to the quantity of marijuana, following Pelchat's own admission to the amount of drugs involved was 500 pounds of marijuana.

> MR. LACKNER: . . . First, Mr. Meshbesher, would you stipulate that if we went to trial, we could prove that it was 500 pounds of marijuana tested that was actually seized that day?
>
> MR. MESHBESHER: Yes, I would stipulate to that.

(GPT 54). Pelchat himself admitted this amount and admitted it was marijuana. (GPT 51-52). Thus, whether his attorney stipulated or not would not have changed anything.

Due to the stipulation, Pelchat argues that counsel was ineffective for failing to inform him that the government withdrew its motion for an evidentiary hearing. See Pelchat § 2255 Memorandum at p. 42. This argument is belied by the record. While Pelchat claims he fully expected a hearing on drug quantity, and claims he was prejudiced because the government would no longer be required to prove the amount of drugs involved, the withdrawn motion for an evidentiary hearing that the defendant is referring

to was in regard to whether Pelchat provided assistance to warrant a downward departure at sentencing. It had nothing to do with the determination of drug quantity, nor was the fact that the government withdrew it's motion related to the stipulation to the quantity involved. (ST 10). There was never a need for an evidentiary hearing over the drug quantity as the defendant, himself, had admitted the amount.

**B. Pelchat Received Notice Before His Plea That His Prior Convictions Exposed Him To Enhanced Penalties Under 21 U.S.C. § 851**

Pelchat claims that counsel was ineffective for conceding to the Information providing for an enhanced mandatory minimum sentence. See Pelchat § 2255 Memorandum at 59-67.

Based upon the defendant's two federal felony drug convictions, the United States filed an § 851 Information. Specifically, § 851(a)(1) Proceedings to establish prior convictions, "Information filed by United States Attorney" provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

The Information was filed and served on April 17, 2000, (Docket no. 99), the day before Pelchat's change of plea hearing. At the Change of Plea Hearing, the government stated prior to

Pelchat entering his plea, that it had filed and served the information. Pelchat's attorneys did not dispute that they had been served with the Information. Additionally, the government provided Pelchat with another copy at the Change of Plea hearing, prior to his entering his plea (GPT 43, 44), which is all that is required of the statute.

Pelchat further argues that 21 U.S.C. § 851 must be charged by Indictment. See Pelchat's § 2255 Memorandum at pp. 65-67. Prior to sentencing, defense counsel moved to dismiss the Information arguing that § 851 is unconstitutional as it violates the Fifth and Sixth Amendments to the United States Constitution. (Docket no. 150). Counsel argued that because the § 851 enhancement was not charged in the original indictment it should not be considered at sentencing, and was a violation of Pelchat's right to be prosecuted by an indictment of a grand jury, and proven to a jury beyond a reasonable doubt (Apprendi claim). This argument has been specifically rejected by the Eighth Circuit. United States v. Aguayo-Delgado, 220 F.3d 926, 932 (8th Cir. 2000). Pelchat submitted a pro se motion to the district court raising essentially the same argument. (Docket No. 165). The District Court reviewed and denied these motions at the sentencing:

> The defendant filed a number of things, including a motion to dismiss the pre-sentence investigation, a motion for downward departure, and various addenda, a motion to dismiss the 851 information as violating the Fifth and Sixth Amendments. There were two memoranda there, one by the defendant's attorney and another by the

> defendant pro se. The government opposed.
>
> The defendant filed another motion to dismiss the 851 indictment as a violation of the Fifth Amendment, and the government's motions to substantial assistance.
>
> I believe that insofar as there are other issues which were filed by the defendant, they lack a cognizable basis in law and they are declined.

(ST 53).

Counsel appealed the district court's denial to the Eighth Circuit challenging the validity of a 1990 conviction based on Apprendi and lost. See United States v. Pelchat, 40 Fed. Appx. 306 (8th Cir. 2002). Defense counsel exhausted the available arguments on the issue.

Section 851(e) "Statute of Limitations" provides:

> No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the Information alleging such prior conviction.

The Information here was filed and served on April 17, 2000, and the prior conviction complained of occurred on May 14, 1990. The above-cited provision has been found to be constitutional by the Eighth Circuit, as well as every other Circuit to consider it. United States v. Prior, 107 F.3d 654, 661 (8th Cir. 1997); United States v. Gonzales, 79 F.3d 413, 426-27 (5th Cir. 1996); United States v. Arango-Montoya, 61 F.3d 1331, 1338 (7th Cir. 1995); United States v. Davis, 36 F.3d 1424, 1438-39 (9th Cir. 1994).

Within this argument, Pelchat also claims that he did not know

he would be pleading guilty to the career offender provision of the sentencing guidelines. At the change of plea hearing, the Court asked the prosecutor and Pelchat's attorney if they had a ball park figure of where the defendant would fall if the guidelines were calculated at this point:

> MR. LACKNER: I do, you Honor. I've got two calculations, one is based on acceptance and one is not. Given the fact that he's a career offender --
>
> THE COURT: Category 6?
>
> MR. LACKNER: Category 6. And the fact that he's facing life, his guidelines would be calculated at – base offense, 37 at 6, which is 360 to life. If he gets acceptance for responsibility, the range would be 262 to 327.
>
> THE COURT: Have you had a chance – I'm looking at a book – and there's a copy in front of you – it's sort of an orange-colored book, I guess, or tan, or something. But have you ever seen this book or one like it?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Inside the back cover is a chart. Have you gone over that chart with your lawyers?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Based on your prior criminal history, which puts you in what's called a "Category 6," that's running across the top, and, then, going down the dope, and whether or not you're regarded as accepting responsibility – that's a decision that I get to make – it looks you're at – what's the score, 37 and – or 33 – or 37 or 34?
>
> MR. LACKNER: Your, Honor, without acceptance, 37; with acceptance, 34.
>
> THE COURT: Mr. Meshbesher, have you pointed that out to your client on the chart?

> MR. MESHBESHER: I've done that extensively, and I've submitted a memorandum discussing that to him. So he's very aware of those calculations – which are exactly correct.
>
> THE COURT: So we're looking at somewhere between 28 [sic] months on the bottom end and maybe as long as the rest of your life. Understood?
>
> THE DEFENDANT: Yes, your Honor.

(GPT 46-48). The record shows that the defendant was well aware of the guideline range he faced, and understood that the career offender enhancement applied.

The PSI found that the defendant was a career offender (U.S.S.G. §4B1.1), because he has four prior felony drug convictions and because the instant offense is a controlled substance offense.[2] At sentencing, the defendant objected to the career offender enhancement and lost as noted by the District Court:

> The defendant has particularly objected to being classified as a career offender and for the sentence which falls thereunder. It's the defendant's argument that the state must have charged him as a career offender originally. The government responds citing – and his

---

[2] Pelchat has been involved in crime since the age of 17, when he was certified as an adult to stand trial for attempted aggravated robbery. See PSI, ¶ 47. His four prior felony drug convictions started in 1984, with his last conviction for drugs (not including the instant offense) occurring in 1990. The defendant would reach career offender status with two felony drug convictions. Even without achieving career offender status, Pelchat's total criminal history is 19 points (Criminal History category VI). PSI, ¶¶ 62-65. If the defendant had not been a career offender, his guideline range would have been 210-262, at an offense level of 32. PSI, ¶ 37. Therefore, Pelchat's argument here is moot.

> claim is based on Apprendi. The government replies citing United States vs. Delgado, that the court can validly increase it based on a prior conviction. Apprendi, by the way, says, particularly, that prior convictions need not be separately proved. Because the PSI's analysis placed the defendant at the lower of the statutory maximum of life, it appears to the court that the Apprendi claim is invalid upon its face.

(ST 50). Pelchat is a career offender, and his argument fails.

### C. Pelchat's Claim That Counsel Failed To Object To The Inaccuracies of The PSI Is Without Merit.

Pelchat claims that his counsel was ineffective for failing to object to the PSI because the facts in the PSI are inaccurate. He argues that evidence concerning drug quantity in the PSI cannot be relied upon, because it is based on an informant who was on supervised release. He claims that the PSI contains nothing but "naked or unsupported" charges, and that it should not have been used as evidence. See Pelchat's § 2255 Memorandum at pp. 50-53. Pelchat claims that the government failed to satisfy its burden of proof regarding drug quantity, that there should have been a hearing, and that the marijuana should have been re-weighed. He contends that because quantity was never established, he should not have been held responsible for the entire amount of drugs. Id. at 52-56.

This argument is without merit because the defendant admitted at the plea hearing to conspiring to possess with the intent to distribute 500 pounds of marijuana. Thus, it was a reasonable decision by defense counsel not to object to the portions of the

PSI involving the offense and drug quantity. Pelchat fails to show that the outcome of his sentence would have been different if counsel would have objected to the PSI as the defendant supposedly would have liked him to. Pelchat's conclusory allegations will not a support a motion under 28 U.S.C. § 2255. See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); Strickland v. Washington, 466 U.S. 668, 689 (1984); Estes v. United States, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).

**D. Pelchat Entered a Straight-Up Plea of Guilty and Admitted to the Facts Involved.**

Pelchat's final argument is that his sentence is in violation of both Apprendi and Blakely.[3] He claims that the indictment is defective because it failed to charge him with the enhancement under 21 U.S.C. § 851, the career offender enhancement, specify drug quantity, and name the overt acts. Pelchat claims that the evidence only supports the charge of offense simpliciter. As a result, he seeks to be resentenced under 21 U.S.C. § 841(b)(1)(D) and without the career offender enhancement. See Pelchat's § 2255 Memorandum at pp. 34-35; 59-70.

---

[3] In Blakely v. Washington, 124 S.Ct. 2531 (2004), the Supreme Court held that the application of a Washington sentencing procedure did not comport with the Sixth Amendment where a pertinent sentencing finding was made by a judge rather than a jury. The Court held that this procedure violated the principle set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that any fact which increases a statutory maximum sentence must be found by the jury under a reasonable doubt standard.

Pechat's arguments fail for two reasons. First, the defendant admitted to the drug conspiracy as charged and to the drug quantity involved. Therefore, he cannot now claim he was entitled to a jury trial on the very facts he admitted to in his plea (GPT 49-52). See United States v. Lucca, 377 F.3d 927, 934 (8th Cir. 2004)(Blakely not violated when sentence imposed was based on facts admitted by the defendant at his guilty plea); United States v. Thomas, – F.3d – , 2004 WL 2680755 (3d Cir. 2004); United States v. Monsalve, 388 F.3d 71, 73-74 (2d Cir. 2004); United States v. Saldivar-Trujillo, 380 F.3d 274, 279 (6th Cir. 2004).

Second, the Supreme Court did not announce that Blakely should be retroactively applied to cases on collateral review, like the defendant's case here, as required by Section 2255. See generally Blakely, 124 S. Ct. 2531. In fact, in Schriro v. Summerlin, 124 S. Ct. 2519, 2523 (2004), an opinion issued on the same date as Blakely, the Supreme Court strongly implied that Blakely is not to be applied retroactively. Two Courts in this District have reached the same conclusion in United States v. Stoltz, 325 F.Supp.2d 982, 986 (D. Minn 2004); United States v. Falodun, Cr. No. 01-380 (1)(ADM/RLE)(D. Minn. (Order dated Oct. 25, 2004)); see also In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("the Supreme Court has strongly implied that Blakely is not to be applied retroactively"); United States v. Stancell, – F. Supp. 2d –, 2004 WL 2738828 (D.C. Dec. 2, 2004); United States v. Quintero-Araujo, – F. Supp. 2d –,

2004 WL 2470916 (D. Idaho, Oct. 25, 2004). 2004); Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004)("[t]he Supreme Court has not made the Blakely rule applicable to cases on collateral review as is required for authorization under § 2244(b)(2)(A) and § 2255 ¶ 8(2)").

Because Blakely was not given retroactive application, Pelchat is not entitled to relief, and his motion should be denied.

**II. AN EVIDENTIARY HEARING IS UNNECESSARY**

"A § 2255 'petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact.'" Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998), quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). Pelchat fails to meet this burden, and therefore, an evidentiary hearing is unnecessary.

## CONCLUSION

For the foregoing reasons, Pelchat's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 should be denied.

Respectfully submitted,

Dated: December 13, 2004.

THOMAS B. HEFFELFINGER
United States Attorney

s/James E. Lackner
BY: JAMES E. LACKNER
Assistant U.S. Attorney
Attorney ID Number 59298