UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 00-25 (JMR/FLN)
Civil No. 03-6532 (JMR)

RECEIVED
BY MAIL
JAN 19 2005
CLERK, US DIST. COURT
ST. PAUL, MN

Joseph C. Pelchat,

Petitioner/Movant,

v. 

United States of America,

Respondent.

**TRAVERSE**

## STATEMENT

The Government's Opposition To Defendant's Motion Pursuant To 28 U.S.C. § 2255 contains many misleading "facts", misrepresentation of facts, and at least one outright lie. The government also presented a distorted interpretation, misrepresentation, and actual changing of the record of the proceedings. All of this must be contradicted and challenged as many of these "mistakes" may be dispositive of several issues if left unchallenged.

As much as possible, Pelchat will not waste the Courts time rehashing his legal claims or challenging the governments legal analysis except for where the government is not on point, or clearly in error.

To the extent of the government not contesting several of the claims presented, Pelchat asserts that if the court finds he is not procedurally barred, the government concedes these claims on their face.



SCANNED
JAN 19 2005
U.S. DISTRICT COURT ST. PAUL

Pelchat once again invokes the liberal pleadings doctrine as provided in Haines v. Kerner, 404 U.S. 519 (1972) and White v. Wyrich, 530 F.2d 818 (8th Cir. 1976).

Starting at the **Introduction**, Pelchat believes that he would have been found guilty of violations of 21 U.S.C. §§ 841(a)(1) and 846 and on that basis he decided to plead guilty. But in regard to the relevant issues presented, there was no "overwhelming evidence" because no evidence to these relevant issues had been entered into the record regarding quantity, career offender, or 21 U.S.C. § 851. (As will be shown, no one besides the government knew what conviction(s) the government was relying on for the career offender and § 851 enhancements at the time of the plea.) Further, at the time of the plea, all the relevant issues concerned sentencing factors that were to be decided by the court at sentencing.

As to his appeal being resolved against him, again, to the relevant issues presented, there was no adjudication of these issues, there was only a denial without comment to which Pelchat asserted in ground 12 of the § 2255 that he was denied due process of law.

The only actual ruling to the relevant issues presented concerned quantitty, which then drove career offender and § 851, in which the Court of Appeals affirmed Pelchat's sentence based upon the finding that "Pelchat pleaded guilty to 21 U.S.C. § 841(b)(1)(B).

Pelchat believes that this finding was error and afterwards argued that in order for the Court of Appeals to have found that Pelchat pleaded guilty to § 841(b)(1)(B), under de novo review, that sua sponte they necessarily had to find Rule 11 violations and Ex post facto violations along with the other arguments presented. The point being that the government is completely overlooking the fact that only part of the § 2255 is based upon ineffective assistance of counsel and that Pelchat also based the § 2255 upon denial of due process which encompasses **every** issue presented of constitutional violations.

Finally, the government claims that "Pelchat is unable to show that he was prejudiced by counsel's performance or that the outcome of his case would have resulted in a lesser sentence."

Plechat believes that prejudice was established in the § 2255 motion and memorandum of law. Pelchat is proceeding pro se and humbly requests that the court grant him the opportunity to file a more thorough briefing on this issue if the court finds that he did not adequately or clearly brief this issue.

Prevailing on any issue presented would have resulted in a lesser sentence. Had counsels performance not been deficient the outcome surely would have resulted in a lesser sentence.

Moving to the **Statement of the Case and Facts** the government alleges that "the charged offense is but one episode of a multi-year marijuana conspiracy." Pelchat was charged with a conspiracy from December 28, 1999 to January 3, 2000 which consisted of

one act and one alleged amount of marijuana. The government abandoned all claims to other amounts of marijuana at the sentencing hearing therefore any mention of other alleged amounts of marijuana are irrelevant to the present proceedings. See S. Tr. page 52.

> "A government motion for an evidentiary hearing, which was withdrawn,"

and page 60

> "Exactly. And, so, I would ask the court merely to find the 475 and base its calculations based on where the guidelines go from there."

The government attempts to portray Pelchat's plea of guilty as resulting from a breakdown in negotiations for substantial assistance. The only reason that Pelchat even considered such a notion is that he was made aware by the government early on that his Mother, Son, and Wife were to be included in the offense in a superceding indictment.

The Court: I think the question is did the government tell you they suspected other members.
The Defendant: Yes. They stipulated that they were thinking about indicting other family members.
Mr. Lackner: And at one point we were talking about a package deal; is that correct, you -- between you, your attorney and us?
The Defendant: Yes.
Mr. Lackner: And I told your attorneys subsequent to that that we've decided to make that a totally separate and independent judgment on our part, and that whether you plead or don't plead would have no impact either way on what happened to our decision -- or in our decision-making as to the other people; is that a fair statement?
The Defendant: As of yesterday, yes.
Mr. Lackner: So you understand as you sit here today that whether you plead or whether you don't plead has no bearing whatsoever on our assessment on whether we want to proceed on the other family members we've talked about; correct?
The Defendant: Yes.

There was no basis for such charges but Pelchat is fully aware of the tactics and power of the government. It was clear that one, Pelchat offered no substantial assistance and two, that the previous government threats to Pelchat's family or possible assistance had no impact on his decision to plead guilty. He pled guilty with no plea agreement with the government for the reasons he has stated all along.

Of particular concern is an assertion of the government that may affect the disposition of the quantity issues that is not true and is clearly contradicted by the record. The government asserted, "Pelchat contacted Brown by phone, and set up a delivery of what he expected to be between a 500 - 1000 pound shipment of marijuana." What the record states is:

> The Court: Okay. And you contacted him. How did you contact him, telephone, wire?
> The Defendant: By the telephone.
> The Court: Okay. What did you tell him? I realize you're not a tape recording. I'm just trying to figure out what you told him.
> The Defendant: I told him to -- I asked him if he -- talked to him and **asked him if he would send me some weed.**
> The Court: Okay. And did you discuss a quantity of marijuana?
> The Defendant: Yes.
> The Court: I take it when you said "weed," you and I both understand we're talking about marijuana.
> The Defendant: Yes, we're talking about marijuana, your Honor.
> The Court: Okay. **Did you tell him how much you wanted?**
> The Defendant: **It doesn't really work like that. It's kind of what he can give me.**
> The Court: Okay. Were you expecting a nickel bag?
> The Defendant: No. No. No. No. Five hundred, a thousand -- I don't -- **but it's what he can get me. I don't know.**

P. Tr. Pgs. 51, 52 (emphasis added).

The government attempts to make it appear that Pelchat set up a delievery for 500 - 1000 pounds of marijauna, but the record is clear that Pelchat had no control of quantity. The only place that Pelchat had said anything about quantity was when the court asked if he was "expecting a nickel bag?" Pelchat responded no, five hundred, a thousand - I don't -- but it's what he can get me. **I don't know.** How much more clear it can be that Pelchat was merely attempting **a guess** and that **he didn't know.**

As to Pelchat having done business with his co-defendant before, Pelchat believes that this is irrelevant as he was not charged with any other deals and the government abandoned **all** arguments of other quantities of marijuana.

Pelchat did not admit "the two" had done deals of this size before, Pelchat only admitted that he had dealt in those quantities previously, which again, is irrelevant.

Once again the government continues the charade that Pelchat admitted and stipulated to the quantity of marijuana involved in the instant offense. This is getting tiring. To even the most casual objective observer of the proceedings of this case, it is crystal clear that there is and has been a conflict over several issues, including quantity, between Pelchat and his attorney.

Perhaps when the government moved to recuse Pelchat's attorney for being "house counsel" it took all the fight out of him. Whatever the case may be, Pelchat has done everything short of punching his attorney in the nose in open court to show con-

flict. That the government continues to pretend that Pelchat admitted and stipulated to any quantity is absurd when the only one to ever admit or stipulate to anything is Pelchat's attorney, which he has done completely on his own, with no strategic purpose, or permission from Pelchat.

It is clear also that Pelchat never did admit to quantity, **could not** admit to quantity, and has challenged quantity on several grounds the entire time of this case even as attorney continued in conflict with him on the quantity issue.

Lastly, on this section, the government narrowed the issues down to four basic issues. The government has missed many issues presented, such as speedy trial, double jeopardy, career offender, pendency of the proceedings, etc.. To all the issues that the government has not addressed Pelchat asserts that they have conceeded these issues.

Under the **ARGUMENT** section, the governments reliance on Blom v. United States, 2003 WL 21639165, *2 (D. Minn. Jul. 2, 2003) (unreported) citing United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) are not on point. Pelchats claims are based on a denial of due process of issues that have been raised since District Court, and ineffective assistance counsel.

As to section I of governments argument Pelchat believes that he established that his counsel's representation fell below an objective standard of reasonableness; and but for counsel's unprofessional errors, the result of the proceeding would have been different.

Pelchat asserts that his counsel's performance fell below "reasonable" professional competence. Finding that Pelchat was in fact prejudiced would lend to the presumption that counsels performance was deficient.

The government in making the quote "not second-guess strategic decisions or exploit the benefits of hindsight." Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997) also is not on point. Attorney's strategic decisions in this case prejudiced Pelchat because they served no legitimate purpose, and, in fact only served to guarantee the highest sentencing range possible for Pelchat. As to the government seemingly implying that Pelchat is attempting to exploit the benefits of hindsight, this is simply not true. Pelchat has been raising all the issues presented in the § 2255 since the district court onward.

As to section **A.** Pelchat knowingly and voluntarily pled guilty straight-up to 21 U.S.C. §§ 841(a)(1), and 846 with full knowledge in accordance with the law of the Eighth Circuit. Pelchat did not claim that his guilty plea was entered unknowingly, and involuntary, and unintelligently until the Eighth Circuit Court of Appeals held that Pelchat pled guilty to 21 U.S.C. § 841(b)(1)(B). Pelchat surely did not understand that he was making a plea to § 841(b)(1)(B) at the time of the plea. Why the government makes the point that Pelchat was ready to enter a plea on April 18, 2000 perplexes Pelchat, that has nothing to do with the fact that the law changed after Pelchat pled guilty.

The government asserts that it did not ask defense counsel to stipulate to the quantity of marijauna until after Pelchat's own admission to the amount of marijuana involved is 500 pounds marijuana. Therefore, their conclusion that whether his attorney stipulated or not would not have changed anything, is clearly flawed as Pelchat never admitted to any specific quantity of marijuana, nor could he admit to any specific quantity of marijuana because he did know the amount of marijuana being shipped, nor did he ever see any marijuana.

The government is clearly misleading the court where it claimed that the withdrawn motion for evidentiary hearing had nothing to do with the determination of drug quantity. The government specifically made the motion for an evidentiary hearing to "prove up amounts" as shown in Docket # 128 on 9/22/2000. Also, in the sentencing transcript on page 52 lines 20 and 21, the court clearly stated that it was "A **government** motion for an evidentiary hearing, which was withdrawn". The government pulled its own cover on page 8 of its Opposition to Defendant's § 2255 where it spoke of the defendant moving for evidentiary hearing that was **denied** by the District Court because the defendant failed to make a substantial threshold showing. The government has clearly waived their argument on the quantity of marijuana.

As to section B. receiving notice does not satisfy the service requirement of 21 U.S.C. § 851. Pelchat's attorneys

**could not** dispute that they had been served with information because the government claimed that they sent the information by mail on the preceeding day. See P. Tr. pg. 44 lines 2 - 9.

> Mr. Lackner: Your Honor, for the record, we filed it with the court yesterday, and served both Mr. Hughes and Mr. Meshbesher by fax yesterday and mailed it yesterday, and they received the mail copy this morning.
> The Court: I don't know they dispute that they received it.
> Mr. Lackner: I just wanted to make a record on that.

As the hearing was in the afternoon and neither attorney had a copy of the information, obviously, they did not receive a mail copy that morning as asserted by the government, but believed in good faith that the government had mailed the information which turned out not to be true.

Amazingly, approximately four and one half years after the plea, the government, for the first time claims that they provided Pelchat with another copy at the Change of Plea hearing prior to his entering his plea. This is an outright lie, compounded by the fact that the judge and the court itself was witness to the fact that this assertion is not true. More proof that this is not true is evident from the Plea Transcript itself. Why would the government try to convince the court that the information was served by mail?

Pelchat is fully aware of the law in relation to service of the § 851 information and knows that service would have been complete if the government would have served a copy on Pelchat and/or his attorney at the Change of Plea hearing. Pelchat would

not have frivolously wasted the courts time or his own time on this issue if the government had served the information on him in open court. That the government would lie astounds Pelchat and Pelchat asserts that the government conceeds Pelchat's argument, and this was but a last ditch effort by the government to enhance Pelchat's sentence under 21 U.S.C. § 851.

The government asserted that Pelchat's counsel appealed the district courts denial of motion to dismiss the indictment in the 1990 case and lost. First off, Pelchat's attorney did not appeal that issue to the 8th Circuit, Pelchat himself appealed that issue to the 8th Circuit, his attorney merely submitted Pelchat's appeal as a suplimentary brief. The 8th Circuit never addressed that issue in any way, shape, or form. The question now that has yet to be answered is, "When the government initiates proceedings to impose a sentence for a violation of supervised relese, does such action bring the case back into the pendancy of the proceedins within the meaning of Rule 12(b)(2)?", because the motion to dismiss the indictment was based on the exception clause in Rule 12(b)(2). The arguments were not exhausted because they were never judicated.

Government also has now engaged in changing the record of the proceedings in the quote:

> "The Court: So we're looking at somewhere between 28 [sic] months on the bottom end and maybe as long as the rest of your life. Understood?"

The plea transcript does not have [sic] in that paragraph. There

is an example in the record of the plea hearing where the transcriber used [sic] to show that the court mis-spoke,

"If you want to wait another today [sic]" P. Tr. p. 32.

It is not up to the government to decide if the court mis-spoke, the record is what it is. Pelchat certainly believes that there were instances where he would like to make the record look incorrect but is not so arrogant that he feels that he can change the record when it suits him. The government should not be allowed to either.

Pelchat objected to be classified as a career offender on two grounds. One was because his criminal history over represented the seriousness of his past offenses. His prior felony drug convictions were for small amounts of drugs. Of the nine points Pelchat received for prior felony drug convictions, one of the sentences imposed was for two of the convictions, ran concurrent which should of resulted in only six points. Seven of the points was for misdemeanor offenses. Three of the points was guideline enhancements for being on parole at the time of the offense, and for the offense occuring within two years of release from a supervised release violation. Pelchat had served eleven years total for the prior minor drug convictions. Pelchat believes that the criminal history over-represented the seriousness of his prior record.

The other ground was that Pelchat asserted that he must be charged as a career offender, and that it must be submitted to a

jury and proved beyond a reasonable doubt, not merely that it must be charged as the government asserted. As stated in Pelchat's memorandum of law, career offender relies on facts beyond the mere fact of prior conviction in order for the enhancement to apply.

On page 20 of the Governments Response, footnote 2, the government asserted "If the defendant had not been a career offender, his guideline range would have been 210 - 262, at an offense level of 32.", and reasoned that therefore Pelchat's arguments is moot. This is troubling because if what the government asserts is taken to be true, Pelchat would have suffered no prejudice on his claims.

The guideline range of 210 - 262 months at category VI is for one thousand to three thousand kilograms of marijuana. This equates to a charge under 21 U.S.C. § 841(b)(1)(A). Pelchat was not charged under 841(b)(1)(A). The government is claiming victory on quantity of marijuana that was never found in this case. Further, the government asked the court to merely find 473 pounds of marijuana, and abandoned all claims to greater quantities by doing so. The government also withdrew their motion to prove up amounts, so they have waived the argument to greater amounts. The base offense level for 473 pounds, which is a 841(b)(1)(B) offense, is level 26. At category six the guideline range is 120 to 150 months, therefore the governments claim is invalid on its face.

As to section C. of the governments response, Pelchat did not "supposedly" like his counsel to object ot the PSI. Pelchat did not only object to his PSI, (which his counsel got wrong) but also instructed his counsel to motion to dismiss the entire PSI.

Once again, the government is claiming that Pelchat admitted to five hundred pounds of marijuana, and therefore it was a reasonable decision by defense counsel not to object to portions of the PSI involving offense and drug quantity. Rather than rehash the governments claim that Pelchat admitted to five hundred pounds yet again, Pelchat requests that the court review and decide this issue definitely.

Also, the marijuana should have been re-weighed irrespective of any other finding because Pelchat had a right to be sentenced on the actual quantity of marijuana, and at the time, the law required that the marijuana be separated from the packaging material. See, U.S.S.G. 2D1.1 Application Note 1. And relevant case authority.

Turning now to section D. of the governments response entitled "Pelchat entered a straight-up plea of guilty and admitted to the facts involved" where the government attempts to contravert Pelchat's argument that his sentence is in violation of both Apprendi and Blakely.

First, many of the Apprendi arguments are separate from Blakely. To the extent possible, Pelchat purposely kept the Apprendi arguments seperate from Blakely in his memorandum of

law so if for any reason the court finds that Blakely does not apply, the Apprendi arguments stand on their own merit without regard to Blakely.

The government seems to have misunderstood the full extent of Pelchat's Fifth Amendment indictment challenges but he does not address them here, he only humbly requests that the court review his briefing in answer to the government's position. The indictment was not defective, it properly charged violations of 21 U.S.C. §§ 841(a)(1) and 846, it was insufficient for the sentence imposed.

The government attempts to dispose of all of Pelchat's Sixth Amendment jury trial rights and concurrent standard of proof by merely asserting that he "admitted to the drug conspiracy as charged and to the drug quantity involved." The governments entire defense rests upon the assertion that Pelchat admitted to a quantity of marijuana somewhere between 473 to 500 pounds, and to the conspiracy charged.

Because Pelchat has to contradict the governments assertion or the government will claim that he agrees, he does so again here. Pelchat has pointed out that even the government agents would have to testify that Pelchat never even seen the alleged marijuana. In the district court Pelchat has challenged the quantity of marijuana involved continuously, including the quantity involved in the intant offense. Pelchat has also contested the governments assertion that he admitted to the quantity in the instant offense

**in the district court.**

Everyone was put on notice, this was no secret, Pelchat denied admitting to quantity and he proceeded independantly of his attorney. Pelchat could not very well have asked the court to replace his attorney after he had just fought to keep him at the recusal hearing. It was clear that Pelchat did not and **could not** admit to the quantity allegation, why the government did not deal directly with this issue then, or just simply fulfill their burden and **prove on the record** the quantity of marijuana is beyond Pelchat. Pelchat and his family deserve and have a right to be able to rest knowing that the sentence was for the correct actual quantity of marijuana.

The cases that the government cites to support the contention that Blakely was not violated by alleged admission are not on point to Pelchat's case. Lucca, Thomas, Monsalve, and Saldivar-Trujillo all had plea agreements which were signed by the defendants, and the issue of their admissions was much more clearly defined. They had also waived their right to appeal on the issues which also was determinitive to the ruling.

All of these cases had indictments returned post-Apprendi. This is crucial as this was a main factor in the decisions. In Pelchat's case, he was indicted pre-Apprendi when it was technical error to include the penalty provision (sentencing factor) in the indictment and defendants did not plead guilty to these sentencing factors. The penalty provision (sentecing factor) was

determined by the court at sentencing. In all these cases the Apprendi requirements of the indictments were fully and properly incorporated in the indictment and their plea lawfully established guilt on the contraverted isues.

The governments argument is also to narrow to encompass the scope of Pelchat's Apprendi and Blakely arguments. If the court was to find what Pelchat did in fact admit to the drug conspiracy and to marijuana quantity he still was not charged with 21 U.S.C. § 851, or career offender. Of more importance, Pelchat has never admitted to either of these enhancements at any time during the proceedings of his case.

Each of these enhancements rely on facts other than the mere fact of prior conviction. Pelchat asserts that even if the career offender is allowed to be applied under the preponderance of the evidence standard, the career offender enhancement operates no differently than any other guideline enhancement, therefore it would be applied to the maximum sentence established solely by the facts admitted by the defendant.

If, in fact, the court found Pelchat admitted to the quantity of marijuana the government alleges that he admitted it would result in a base offense level of twenty-six (26). At category six (6) the guideline range is 120 - 150 months. With neither enhancement applied, minus three (3) points for acceptance of responsibility, Pelchat would have a right to a sentence of 92 - 115 months.

Even with both enhancements applied the result would be a sentence of ten years because of the mandatory minimum.

Of course, if Pelchat was to prevail on all his arguments the sentence would be zero to five years with the ranges being moot because he has already served over five years.

If Pelchat was only to prevail on his quantity argument the statutory penalty would be zero to ten years, because the enhancement under 21 U.S.C. § 851 would raise the penalty under 841(b)(1)(B) from zero to five, to zero to ten years. Applying career offender would call for an offense level of 24, which is 100 - 125 months. Take away three points for acceptance of responsibility (Pelchat has never contested his guilt, only the sentence) and the resulting range is 77 to 96 months.

The government is arguing that Blakely should not be applied retroactively on collateral review. Pelchat is arguing that the government is wrong for all the following reasons. Pelchat needs to argue in the alternative several different issues why Blakely is to apply to his case retroactive or not.

Generally, Pelchat will argue that Blakely is not a "new" rule, and therefore, retroactivity is not an issue. Also, Pelchat has preserved all the Blakely issues since district court. Although the arguments may not have been labeled "Blakely" arguments, Pelchat has been arguing his legal right to a lesser sentence throughout the proceedings without regard to the statutory maximum. Also, he has been arguing the Sixth Amendment and

the concurrent standard of proof attached to his jury trial right. Both of these issues preserved his Blakely arguments.

Pelchat is also arguing what may be termed as a partial retroactivity argument. The essence of this argument is that Blakely is applicable to any defendant who has properly preserved Apprendi arguments.

Pelchat will also argue that Blakely is retroactive on several grounds.

The cases that the government is relying on have the same general theme, that in essence relies on Schriro v. Summerlin, 124 S. Ct. 2519 (2004) that the cases reason the Supreme Court strongly implies Blakely should not be applied retroactively. The other common theme to these cases is that the accuracy of the proceedings is not seriously diminished by judicial fact-finding, rather than the jury.

In Schriro, it was found that Ring was not to be applied retroactively to Arizona Death Penalty cases. Ring applied the rule of Apprendi to the fact-finding of the agravating factors in Arizona Death Penalty Proceedings. It was held that the jury must find the aggravating factors instead of the judge. However, the standard of proof did not change, the judge was also required to find the aggravating factors beyond reasonable doubt. In this context, it truely was a mere procedural rule change, because under the beyond reasonable doubt standard the accuracy of the proceedings is not seriously diminished and also mitigating Sixth Amendment concerns that may be substantial.

In contrast Blakely ruling not only changes the finder of fact from the Judge to the jury, but also the standard of proof.

Before we continue Pelchat will first address the arguments that Blakely need not be retroactive to apply to Pelchats case. Blakely is not a new procedural rule. According to the Blakely-rule, the Sixth Amendment is violated when a judge imposes an enhanced sentence under the U.S. Sentencing Guidelines based on the judges determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. In direct contradiction to the Blakely-case, the Guidelines require the sentencing judge to make findings of fact, according to a preponderance-of-the-evidence standard of proof, that determine the sentence, unless the judge makes an upward or downward departure. Thus, the Apprendi-rule, by strict logical implication, requires declaring the Guidelines unconstitutional.

First of all, because of the parsing of the words we can understand the ruling in Schriro of the non-retroactivity of the Court's ruling in Ring. But we can also see that, in contrast, the Apprendi-rule has the most extensive retroactive effect in overturning sentences under the Guidelines. In Schriro, it was written:

> New rules of procedure, on the other hand, generally do not apply retroctively...[Id., at 2523].
>
> **A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.** [Emphasis added]. See Bousley, supra, at 620 - 621, 118 S. Ct. 1604 (rule hold(s) that a ...

> statute does not reach certain conduct or make(s) conduct criminal ... In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural. See Bousley, supra, at 620, 118 S. Ct. 1604.
>
> Judged by this standard, Ring's holding is properly classified as procedural. Ring held that a sentencing judge, sitting without a jury, (may not) find an aggravating circumstance necessary for imposition of the death penalty. 536 U.S., at 609, 122 S. Ct. 2428. Rather, (those circumstances) be found by a jury. Ibid. **This holding did not alter the range of conduct Arizona law subjected to the death penalty. It could not have, it rested entirely on the Sixth Amendment's jury-trisal guarantee, a provision that has nothing to do with the range of conduct a State may criminalize.** (Emphasis added). Instead, methods for determining whethera defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision-making authority in this fashion are prototypical procedural rules, a conclusion we have reached in numerous other contexts....(Id., 2523).

In cases leading up to Blakely and, especially, in Blakely, we see that the Apprendi-rule is more than a new substantive procedural rule. In Blakely, Justice Scalia wrote:

> Our commitment to Apprendi ... reflects not just respect for longstanding precedent, but the need to give intelligible content to the right to jury trial. **That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure.** (Emphasis added). Just as suffrage insures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary. [Letters of John Adams and Thomas Jefferson to support this proposition]. Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict. (Emphasis added). Without that restriction, the jury would not exercise the control that the Framers intended. (Id., at 2538 - 2539).

Accordingly, the Apprendi-rule that Justice Scalia announced clearly in Blakely is not a new substantive procedural rule but is a most vulnerable and fundamental substantive procedural rule

that must be given fullest retroative effect, but need not be retroactive.

Looked at another way, it can best be summed up as saying, where the Supreme Court makes a ruling as to what the law always was, it is automatically retroactive.

Pelchat also asserts that he is actually innocent of the offense for which he was sentenced. The Supreme Court has recognized that the actual innocense exception extends beyond the fact of conviction of the underlying offense, and can extend to innocense of the sentenced imposed. See Murray v. Carrier, 91 L Ed 2d 397 and Dretke v. Haley, 158 L Ed 2d 659 (2004).

Blakely does not need to be retroactive in Pelchat's case because Pelchat has properly preserved his Blakely claims. Further, the Supreme Court ruling in Blakely is to be applied in initial filing of 28 U.S.C. § 2255.

Of tantamount importance, we must first note that the provisions for filing an initial motion under 28 U.S.C. § 2255 based upon a "right asserted [which] has initially recognized by the Supreme Court and made retroactive to cases on collateral review" differs from the provisions for a second or successive motion, "which must be certified as provided in section 2244 by a penal of the appropriate court of appeals...

(2) a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

Only in the case of the second or successive motion must the right asserted be based on a new rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court.

As to an initial motion, such as this is, the right must be newly recognized by the Supreme Court, but the specific language of the statute does not require the newly recognized right to be specifically made applicable to cases on collateral review by the Supreme Court.

Nothing in the language of § 2255 expressly requires the initial motion to be based on a new rule of constitutional law to be made retroactive to cases on collateral review by the Supreme Court.

First, Section 2255 is a product of the Anti-terrorism and Effective death Penalty Act of 1996 (AEDPA). The text of § 2255 shows that, when Congress desires to make the Supreme Court the sole entity that can make a new rule of constitutional law retroactive to cases on collateral review, it does so unambiguously. Several paragraphs below the statutory provision dealing with initial petitions under § 2255, Congress constructed the provision dealing with successive or second petitions under AEDPA. That provision reads as follows:

"[A] second or successive motion (under § 2255) must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain ... a new rule of constitutional

law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." 28 U.S.C.A. § 2255.

In the provision of § 2255 at bar - a provision that Congress passed at the same time and placed in physical proximity to the above-quoted passage - Congress chose not to specify the Supreme Court as the sole court capable of declaring a newly recognized right retroactive. Instead, it wrote that:

"[A] 1-year statute of limitations shall apply to a motion under [§ 2255]. The limitation period shall run from the latest of ... the date on which the right asserted was initally recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255.

The juxataposition of these provisions shows that:

(1) Congress knew how to make the Supreme Court the sole entity that can make a newly-recognized right retroactive;

(2) it chose to do just that in the case of second or successive petitions under § 2255; but

(3) it chose to do just that in the case of other motions pursuant to § 2255. See Bates v. U.S., 522 U.S. 23, 29 - 30 (1997) (reasoning that "where Congress includes a particular language in one part of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the desperate inclusion or exclusion"); cf: U.S. v. Page, 167 f.3d 325, 329 (6th Cir. 1999)

(Moore, J., concurring) (Accepting the Congress-knew-how-to argument); U.S. v. Holmes, 975 F.2d 275, 283 n. 7 (6th Cir. 1999) (same).

Second, the legislative history of AEDPA evinces an intent to broaden the number of courts that can trigger retroactivity. As originally proposed, the part of AEDPA governing federal habeas review of state death sentences, § 2264, limited petitions to cses involving "new constitutional rights that have been retroactively applied by the Supreme Court." Orrin Hatch, Section by Section analysis of Comprehensive Terrorism Prevention Act of 1995, Gov't Press Releases, April 28, 1995, available in 1995 WL 14248293. Section 2264 was the subject of great controversy in the Senate. See Tom Diemer, Terrorism Bill Debate Reflects Conflicting Agendas, Plain Dealer (Cleveland), June 4, 1995 at 4a, available in 1995 WL 7113227.

A last minute amendment to AEDPA; however, moderated the effect of AEDPA as originally proposed by striking the words "Right made retroactively applicable to cases on collateral review by the Supreme Court" and inserting "Right that is made retroactively applicable." 141 Cong Rec. S7924-01, at *S7925 (1995), Available in 1995 WL 338035.

The Senate adopted this amendment by voice cote, See Bill Tracking Report S. 735 @ *11(Lexis-Nexis 1996). Congress eventually included this precise language in the statute 28 U.S.C.A. § 2264(a)(2). There is no known legislative history as to the

reasoning behind this specific change. It is probable however, that the Senate passed such an amendment to effect a compromise that would ameliorate the arguably-harsh impact of this section of AEDPA by broadening the number of courts that could declare a right retroactive. In this context, eliminating the words "by the Supreme Court" would otherwise make no sense.

The operative language of § 2255, made retroactively applicable to cases on collateral review," is almost identical to the wording Congress wording of the AEDPA, it is forgone conclusion that Congress used a passive voice in § 2255 for the same reason it used the passive voice in § 2264: because it did not want the Supreme Court to be the only Court to be the only court that could declare a right retroactively applicable under the section.

Thirdly, by applying a statute-of-limitations to petitions under § 2255, AEDPA was in derogation of the long-standing principle that a motion for relief pursuant to § 2255 "may be made at any time." 28 U.S.C.A. § 2255 (Law. Coop. 1990) (repealed 1999). Because of the "presumption against an intent to change existing law," Johnson v. Southern Pacific Co., 196 U.S. 1, 17 (1904), the court construes any ambiguity in the language of § 2255 in favor of the law as it existed before AEDPA.

Specifically, a petitioner should be barred by AEDPA's statute of limitations only when the statute makes clear that Congress intended such as result. In ambiguous situations, the

maximum that statutes in derogation of existing law must be narrowly construed militates toward allowing a petitioner's motion to proceed. A newly-recognized right applies retroactively for purposes of collateral review suffices to make that right retroactively applicable to a party's first petition under § 2255.

Congress modified § 2255 after Teague through the adoption of the AEDPA of 1996, and AEDPA did "not codify the Teague approach to habeas review wholesale." O'Brien v. Dubois, 145 F.3d 16, 23 (1st Cir. 1998); cf. Ferrazza v. Tessmer, 36 F. Supp. 2d 965, 972 (E.D.Mich. 1999) (Gadola, J.). The plain language of § 2255 militates toward the conclusion that AEDPA did not codify, in particular, Teague's approach to initial petitions under § 2255. Instead, the statutes language merely requires that one condition precedent be met for a petitioner to assert a right, in his initial 2255 petition, within one year of that right's initial recognition by the Supreme Court that condition precedent is that the newly-recognized right have been "made retroactively applicable to cases on collateral review." 28 U.S.C.A. § 2255 (West 2000). If a newly-recognized right, moreover, has already been "made retroactively applicable to cases on collateral review," a Teague analysis (which determines retroactivity) is moot.

It follows that the condition precedent has been met in this application, and that petitioner had one year from the Blakely

decision to assert his rights under the Blakely doctrine in his first § 2255 petition. Petitioner did so when he filed in this court his initial memorandum of law. His petition thus validly contained arguments pertaining to Blakely and Teague should prove no obstacle to the Court's consideration of those arguments. See Rogers v. U.S., 229 F.3d 704, 705-706 & m. 1 (8th Cir. 2000) (noting that the Eighth Circuit accepted review of Apprendi claims in initial 2255 petitions despite never having addressed whether Apprendi states a new rule of constitutional law, i.e., despite never having conducted a Teague analysis); Poe v. U.S., 112 F. Supp. 2d 398, 401-402 (D.J.J. 2000) (allowing without reference to Teague, a petitioner leave to amend his 2255 petition to include arguments under the Apprendi doctrine).

Under 8th Circuit law Pelchat must submit his 2255 motion within one year of the date the Supreme Court initially recognizes new right. Nelson v. U.S., 184 F.3d 953, 954 (8th Cir. 1999) See also; Dodd v. U.S., 365 F.3d 1273 (11th cir. 2004). and; U.S. v. Lopez, 248 F.3d 427, 432-33, (5th Cir. 2001).

Blakely does not state a new rule but merely is an application of Apprendi. On close examination of Blakely, the Supreme Court simply applied - and did not modify - the rule articulated in Apprendi. The 8th Circuit has recognized this position in U.S. v. Pirani, 2004 WL 1748930 (8th Cir. 2004) (vacated on grant of reh'g en banc). More than likely the rehearing was granted until the Supreme Court decided Booker and

Fanfan, Pelchat sees no reason that the Eighth Circuit will change its position once it is decided that Blakely applies to the Federal Guidelines.

**Blakely applies to Pelchat's case because his case was in the district court when Apprendi was decided.**

In Blakely v. Washington, supra, the Supreme Court held that a criminal defendant is entitled under the Sixth Amendment to have ajury determine beyond a reasonable doubt any fact legally necessary to the sentence.

Pelchat did not consent to a guidelines sentence because he pled guilty with no plea agreement, thus reserving sentencing factors to be decided by the court at sentencing. Apprendi should have applied to his case in the district court and on direct appeal.

There was not proof as to drug quantity nor was a determination as to whether Pelchat is a career offender under Section 4B1.1 of the United States Sentencing Guidelines. Drug quantity, 21 U.S.C. 851, and career offender status then drove the whole sentence. The district corut itself determined the drug quantity by a preponderance of the evidence and also made the determination that he was a career offender. Accordingly, Pelchat's sentence is illegal under Blakely and the 6th Amendment because there was no jury determination of the quantity of marijuana, nor of Pelchat's status as career offender, beyond a reasonable doubt.

Pelchat contends that because Apprendi applied to his case in district court it must be applied to his case now in this Section 2255 motion.

Pelchat also contends that Blakely is a new substantive rule because it modified the elements of the offense for which he was convicted, and it applies retroactively to his case for that reason alone. A decision that modifies the elements of an offense is normally substantive rather than procedural. New elements alter the range of conduct the statute punishes. See Bousley v. U.S., 523 U.S. 614, 620-621, 118 S.CT. 1604, 1610 (1998); Saffle v. Parks, 494 U.S. 484, 494-495, 110 S.Ct. 1257, 1263-64 (1990); see also Sattazahn v. Pennsylvania, 537 U.S. 101, 111, 123 S.Ct. 732, 739 (2003) (plurality opinion). (for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of murder is a distinct offense from capital murder). Blakely is a new substantive rule which modifies the elements of conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, as distinguished from a measurable amount, each of which must be proved to a jury. Blakely is therefore a new substantive rule which must be applied retroactively to Pelchat's case.

**Alternatively, Blakely applies to this case under Teague v. Lane.**

Regardless of whether Blakely is a new substantive rule, there is an alternative legal theory under which it clearly must

be applied to Pelchat's case. Under Teague, even if a new rule is procedural only, it applies retroactively in 2255 proceedings if the new proceedure is 91) "implicit in the concept of ordered liberty, implicating fundamental fairness," and 92) "central to an accurate determination of innocence or guilt," such that its absence "creates an impermissibly large risk that the innocent will be convicted." Teague v. Lane, 489 U.S. at 311-313.

As Justice O'Connor said in her dissent in Blakely, "... all criminal sentences imposed under the federal and state guidelines since Apprendi was decided in 2000 arguably remain open to collateral attack. See Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed. 2d 2334 (1989) (plurality opinion) ('[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.')" Blakely, 124 S. Ct. at 2549.

Pelchat contends that he was in fact convicted of a lesser offense of conspiracy to distribute an undertermined amount of marijuana, but that he in fact received a sentence only appropriate had he been convicted of the greater offense of conspiring to distribute in excess of 100 kilograms of marijuana. Accordingly, in his case, "the likelyhood of an accurate conviction is seriously diminished," Teague v. Lane, 489 U.S. at 313. Thus, Blakely applies retroactively.

Pelchat has not yet had a chance to review the decision of Booker and Fanfan at the time of this writing, but the cases have

been decided.

Pelchat respectfully requests that he be granted on opportunity to more fully brief the impact of Booker and Fanfan should it be decided that Blakely is to apply to the initial 2255 in this case.

From Pelchat's initial understanding however, he should be resentenced because the court felt that it was bound by law, and the guidelines to impose Pelchat's sentence.

Court:What I am going to do is follow the law, and what is sad is you did not. You come before a judge because you know you are going to get an honest call, and I have to give you the call that I am required to give you under the law. Plea Transcript 68.

and,

The Court: ... And I have to do what I'm required to do. ... I have no doubt about your sincerity, but the record is what the record is, and I have to make a decision, because Congress says I must, based upon the record and based upon the facts. I will give you the minimum amount, which I'm required by law to give you, but that is what the sentence will be. ... Pl. Trans. 69.

and.

The Court: ... It is a sad situation. You have taken yourself away from them, and now I have done the things that you caused me, and required me, to do. Pl. Trans. 73-74.

From Pelchat's understanding the guidelines are unconstitutional and merely advisory. Therefore, the judges discretion was limited.

## CONCLUSION

For the foregoing reasons, Pelchat's motion to vacate, set aside or correct sentence pursuant ot 28 U.S.C. § 2255 should be granted and Pelchat should receive an evidentiary hearing or be resentenced to whatever relief this Honorable Court deems to be fair and just.

Dated: January 17, 2005

Respectfully Submitted,

Joe Pelchat

Joseph C. Pelchat